E. Evans Wohlforth, Jr.
Allana L. Nason
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879
Attorneys for Defendants CIGNA Corporation

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NORTH JERSEY BRAIN & SPINE CENTER,

Plaintiff,

vs.

CIGNA HEALTHCARE OF NEW JERSEY
and CIGNA CORPORATION,

Defendants.

Civil Action No.: 09-cv-02630 (JAG)(MCA)

Document Electronically Filed

*Oral Argument Requested*

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND

E. Evans Wohlforth, Jr.
Allana L. Nason
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879
Attorneys for Defendants CIGNA Healthcare of
New Jersey and CIGNA Corporation

#1428003 v1
106782-66179

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 4

LEGAL DISCUSSION ...................................................................................................... 6

    I.     ERISA PREEMPTION ...................................................................................... 6

          A.    Complete Preemption under ERISA Section 502 ..................................... 6

          B.    The "Savings" and "Deemer" Clauses ...................................................... 9

    II.    REMOVAL JURISDICTION UNDER ERISA SECTION 502 ......................... 11

          A.    Section 502(a) ......................................................................................... 11

          B.    Plaintiff Could Bring an ERISA claim under Section 502 as an Assignee ................................................................................................. 12

          C.    Plaintiffs Claims are not Supported by an Independent, non-ERISA Legal Duty ............................................................................................. 13

                 (i)    The State Common Law Claims .................................................. 13

                 (ii)   The State Statutory and Regulatory Claims ................................ 16

                 (iii)  Plaintiff's Claims will Require Interpretation of the Terms of the Plans ................................................................................. 23

          D.    The New Jersey Statutes and Regulations are Not Applicable to the Self-Funded Plans in this Case ............................................................... 27

    III.   EVEN IF THE COURT ACCEPTED PLAINTIFF'S ARGUMENTS, TWO OF THE COUNTS OF THE COMPLAINT AND FIFTEEN OF THE CLAIMS AT ISSUE CANNOT BE REMANDED AND THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REST OF THE CASE. ................................................................. 28

    IV.   EVEN IF THE COURT REMANDED THE ACTION, AN AWARD OF ATTORNEYS' FEES WOULD NOT BE APPROPRIATE ............................... 30

CONCLUSION ................................................................................................................. 32

#1428003 v1
106782-66179

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Aetna Health, Inc. v. Davila,
542 U.S. 200 (2004) ................................................................................................passim

Allis-Chalmers Corp. v. Lueck,
471 U.S. 202 (1985) ..................................................................................................... 23

Barber v. UNUM Life Ins. Co. of Am.,
383 F.3d 134 (3d Cir. 2004) ............................................................................. 9, 18, 27

Cannon v. Group Health Serv.,
77 F.3d 1270 (10th Cir. 1996) .................................................................................... 21

Christiansburg Garment Co. v. EEOC,
434 U.S. 412 (1978) ..................................................................................................... 30

D'Alessandro v. Hartford Life & Accident Ins. Co.,
2009 U.S. Dist. LEXIS 37048 (D.N.J. May 1, 2009) ................................................. 24

Daley v. Marriott Int'l, Inc.,
415 F.3d 889 (8th Cir. 2005) ...................................................................................... 10

DiFelice v. Aetna U.S. Healthcare,
346 F.3d 442 (3d Cir. 2003) ....................................................................................... 14

Fink v. Dakotacare,
324 F.3d 685 (8th Cir. 2003) ...................................................................................... 18

Finocchiaro v. Squire Corrugated Container Corp.,
2007 U.S. Dist. LEXIS 12642 (D.N.J. Feb. 22, 2007) ................................................. 8

FMC Corp.,
498 U.S. at 61 ............................................................................................................... 10

Ingersoll-Rand Co. v. McClendon,
498 U.S. 133 (1990) ..................................................................................................... 21

Kanne v. Connecticut General Life Ins. Co.,
867 F.2d 489 (9th Cir. 1988) ...................................................................................... 19

Kentucky Ass'n of Health Plans, Inc. v. Miller,
538 U.S. 329 (2003) ..................................................................................................... 10

- ii -

#1428003 v1
106782-66179

Kurtek v. Capital Blue Cross,
  219 F. App'x 184 (3d Cir. 2007) ...................................................................... 20

Martin v. Franklin Capital Corp.,
  546 U.S. 132 (2005) ............................................................................... 30, 31

Metropolitan Life Ins. Co. v. Taylor,
  481 U.S. 58 (1987) ............................................................................... 7, 9, 21

Muse v. IBM,
  103 F.3d 490 (6th Cir. 1996) ....................................................................... 21

North Jersey Brain & Spine Center v. Healthnet, Inc.,
  Civ. No. 08-4414 (JAG) (Doc. No. 12) ....................................................... 1, 18, 31

Optec Displays, Inc. v. Am. Maint., Inc.,
  2008 U.S. Dist. LEXIS 47562 (D.N.J. June 18, 2008) ........................................ 31

Pascack Vally Hosp., Inc. v. Local 464A UFCS Welfare Reimbursement Plan,
  388 F.3d 393 (3d Cir. 2004) ........................................................................ 11

Penny/Ohlmann/Neiman, Inc. v. Miami Valley Pension Corp.,
  399 F.3d 692 (6th Cir. 2005) ....................................................................... 13

Pilot Life Ins. Co. v. Dedeaux,
  481 U.S. 41 (1987) ............................................................................... passim

Prudential Ins. Co. of Am. v. National Park Med. Center, Inc.,
  413 F.3d 897 (8th Cir. 2005) ................................................................... 10, 18

Pryzbowski v. US Healthcare, Inc.,
  245 F.3d 266 (3d Cir. 2001) ..................................................................... passim

Scott v. Gulf Oil Corp.,
  754 F.2d 1499 (9th Cir. 1985) ...................................................................... 8

Smith v. Dunham-Bush, Inc.,
  959 F.2d 6 (2d Cir. 1992) ............................................................................ 9

Steelworkers v. Rawson,
  495 U.S. 362 (1990) ................................................................................. 23

Vaimakis v. United Healthcare/Oxford,
  2008 U.S. Dist. LEXIS 60435 (D.N.J. Aug. 8, 2008) ........................................ 12

Wayne Surgical Center v. Concentra Preferred Sys., Inc.,
  2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ....................................... 12

- iii -

Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.,
   2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ........................................................ 24

## **Statutes**

28 U.S.C. § 1367 ........................................................................................................................ 4

28 U.S.C. § 1367(a) .................................................................................................................. 29

29 C.F.R. § 2560.503-1(f) ........................................................................................................ 19

29 C.F.R. § 2560.503-1(h) ....................................................................................................... 19

29 U.S.C. § 1024(b) ................................................................................................................. 19

29 U.S.C. § 1101 ........................................................................................................................ 1

29 U.S.C. § 1132(a) ........................................................................................................ 2, 6, 7, 12

29 U.S.C. § 1144(a) ................................................................................................................... 8

29 U.S.C. § 1144(b)(1) ............................................................................................................. 8

29 U.S.C. § 1144(b)(2)(A) .................................................................................................... 9, 27

29 U.S.C. § 1144(b)(2)(B) ................................................................................................... 16, 28

29 U.S.C. § 1144(v)(2)(B) ....................................................................................................... 10

ERISA § 502(a)(1)(B ............................................................................................................... 24

N.J.A.C. § 11:24-9.1 ................................................................................................................ 19

N.J.S.A. § 17B:26-9.1(e) ......................................................................................................... 19

## **Other Authorities**

Jordan, Pflepsen & Goldberg,
   Handbook on ERISA Litig. § 3.06[C] at 3-56 ....................................................................... 19

#1428003 v1
106782-66179

Defendants CIGNA Healthcare of New Jersey, Inc. and CIGNA Corporation respectfully submit this memorandum of law in opposition to Plaintiff North Jersey Brain & Spine Center's motion to remand this matter to the Superior Court of New Jersey. CIGNA respectfully submits that Plaintiff's motion should be denied.

## PRELIMINARY STATEMENT

Defendants have been sued by Plaintiff, a medical services provider, because Plaintiff disputes the amount of payment it has received for medical care provided to patients, beneficiaries of certain employee health care benefit plans administered and, for some of the patients, insured, by Defendants or their affiliates, (collectively "CIGNA"). Defendants removed this case from the Superior Court of New Jersey pursuant to this Court's federal question jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1101, et seq. As this Court is well aware, preemption under ERISA is so complete that even state-law claims that fall within its ambit are removable to the federal courts. This is a straightforward, ordinary claim for benefits under ERISA that Plaintiff attempts through artful pleading to retain in state court.

Plaintiff wrongly contends that CIGNA owes duties to it that are independent of its obligations as claims administrator of all (and insurer of some) of the ERISA plans to which Plaintiff's patients belong. The claims Plaintiff assert are for money allegedly owed for medical treatment of these health plan beneficiaries. The relationship between CIGNA and the plan beneficiaries is the basic ERISA relationship of claims fiduciary/insurer to employee/beneficiary governed by the ERISA statute. Plaintiff cleverly pleads that its claims "do not arise from an assignment of benefits," and, therefore, that it could not bring its claims under ERISA. But Plaintiff is, in fact, an assignee of each of the beneficiaries whose claims are raised in this lawsuit. By virtue of the assignments, Plaintiff stands in the shoes of the plan beneficiaries and

could have sued under ERISA in this Court originally for the same relief it is seeking here. Plaintiff has no direct contractual relationship with CIGNA.

On these indisputable facts, Plaintiff's arguments evaporate. For example, Plaintiff argues that CIGNA's duties under the New Jersey statues upon which Plaintiff relies are independent and separate of its ERISA duties. To the contrary, these duties, the most pertinent of which is to pay claims properly under the terms of the plans, are <u>dependent</u> rather than independent of the plan. In fact, Plaintiff's argument runs directly into a core tenet of ERISA preemption law -- any State law, even one concerned with insurance, is completely preempted to the extent it conflicts with ERISA's broad and comprehensive remedial scheme under Section 502(a), 29 U.S.C. § 1132(a) and removable to this Court.

The gist of this case appears in paragraph 2 of the Complaint: ". . . for each patient to be identified in this litigation, Cigna was obligated to pay [Plaintiff] 100% of plaintiff's billed usual, customary and reasonable ("UCR") fees, less the patient's co-pay, co-insurance or deductible, if any, and/or was required to make payment to plaintiff within 40 calendar days of receipt of plaintiff's bill." In fact, civil enforcement of these plan terms is precisely what the ERISA statute provides for in Section 502, which, consequently, completely preempts the state law claims here. ERISA and its attendant regulations also provide timetables for the payment of claims. That they may differ from the timetables of the New Jersey law cited makes no difference to the preemptive effect of ERISA.

Plaintiff cites not a single authority directly holding that a medical provider can side-step ERISA's civil enforcement provisions by alleging that the New Jersey statutes it cites provide a private cause of action against an ERISA fiduciary. The United States Supreme Court held:

> the detailed provisions of § 502(a) set forth a comprehensive civil
> enforcement scheme that represents a careful balancing of the need

#1428003 v1
106782-66179

> for prompt and fair claims settlement procedures against the public
> interest in encouraging the formation of employee benefit plans.
> The policy choices reflected in the inclusion of certain remedies
> and the exclusion of others under the federal scheme would be
> completely undermined if ERISA-plan participants and
> beneficiaries were free to obtain remedies under state law that
> Congress rejected in ERISA.

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).  If any court had ever accepted Plaintiff's

contention, that a provider can sue a plan administrator directly under state law for whatever

amount they chose to bill the plan beneficiaries, it would constitute a major and significant

breach in the "comprehensive civil enforcement scheme" recognized in  Pilot Life and certainly

would have generated some authority (and more commentary) for Plaintiff to cite.

Plaintiff's pleading is transparently an attempt to avoid ERISA jurisdiction.   The New

Jersey statutes and regulations Plaintiff cites are concerned with regulation of health plans by the

Department of Banking and Insurance and create no private right of action.  If they did create the

right of action Plaintiff claims, such rights would clearly lie within the ambit of complete ERISA

preemption because they would conflict with or supplement its comprehensive civil enforcement

scheme of the federal statute, and thus give rise to subject matter jurisdiction in this Court.

Plaintiff's entire argument based on ERISA's insurance law "savings clause" and the

contention that the state statutes it cites concern insurance, flawed on the merits, do not apply to

a majority of the benefit plans at issue, because they are self-funded and not insured.  Moreover,

Plaintiff now down-plays Counts One and Four of the Complaint, which allege state common-

law causes of action and have nothing to do with the statutory claims Plaintiff now argues are its

"primary claims."  (Plaintiff's Brf. at 3.)   These common law claims are classics of the type of

state-law claims that are removed under ERISA to federal courts daily around the country.  In

fact, a substantial part of the claims raised in the complaint simply are not addressed by

Plaintiff's arguments for remand here.  Thus, even if Plaintiff's arguments for remand were

3

valid, which they are not, federal jurisdiction would remain in this Court as to the balance of the claims and the Court can and should retain the entire matter pursuant to its primary and supplemental jurisdiction under 28 U.S.C. § 1367.

## BACKGROUND

Plaintiff, a healthcare provider, alleges that CIGNA has not properly paid for services rendered by Plaintiff to members or beneficiaries of health care plans administered by CIGNA or its affiliates. Plaintiff does not contract with CIGNA. The subject plans are offered as employee benefits by the members employers.[1] Plaintiff's complaint alleges claims for services rendered to an unidentified number of patients. Prior to the filing of this motion and CIGNA's motion to dismiss, Plaintiff provided to CIGNA a list of 28 patient/plan beneficiaries Plaintiff claims it treated and for whom CIGNA improperly reduced or denied coverage. (Decl. of June Ann Hendrick in Support of Defendants' Opp. To Remand, dated July 31, 2009 ("Hendrick Decl.") ¶ 2.) Of these 28 patients, 15 were beneficiaries of self-insured plans, i.e., plans in which the benefits were funded directly by the employer and as to which CIGNA provided claims administration services only. As to the balance of the 13 plans at issue, CIGNA also issued insurance policies that underwrote the plans' benefit obligations to the various employees. Both arrangements are very common in the ERISA benefit plan industry. A representative example of one of the benefit plan's Summary Plan Description is submitted as Exhibit A to the Certification of Allana L. Nason, Esq., dated August 3, 3009 ("Nason Cert").[2]

---

[1]    See Declaration of June Ann Hendrick, submitted as an exhibit to Defendants' Notice of Removal, Dckt. No. 1.

[2]    A summary plan description, or "SPD", is an authoritative statement of the terms and conditions of coverage under a benefits plan. In the event of inconsistency between the SPD and the actual plan and/or insurance policy underwriting the plan, the SPD will control.

4

All of the beneficiaries assigned their rights to payment under the plans to Plaintiff. (Hendrick Decl. ¶ 3.)

Plaintiff's complaint alleges causes of action under a number of state law theories. In Count One, Plaintiff attempts to plead a claim for unjust enrichment. In Count Four, Plaintiff asserts that CIGNA made false promises to pay and therefore made misrepresentations to Plaintiff. At footnote one of Plaintiff's brief on this motion to remand, Plaintiff apparently recognizes that these claims fall within the scope of ERISA, characterizing them as "ancillary," and stating that "even if completely preempted should not impact the Court's remand analysis as to the statutory claims." (Plaintiff's Remand Brf. at 7 n.1.)

The "statutory" claims, actually claims under one New Jersey regulation and two New Jersey statutes, appear in Counts Two and Three. There, Plaintiff alleges, generally, that CIGNA's processing of the patient's claims is actionable under New Jersey regulations governing payment for emergency services, N.J.A.C. 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d), portions of the New Jersey Healthcare Information Networks and Technologies Act ("HINT Act"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and certain portions of the Health Claims Authorization, Processing, and Payment Act ("HCAPPA") that amend the HINT Act.

CIGNA has moved to dismiss the complaint based upon ERISA preemption and for failure to state a claim. Dckt. No. 7. The fact is that the HINT and HCAPPA statutes and the Emergency Services regulations do not create a cause of action in favor of Plaintiff and do not create any duty owed by CIGNA to Plaintiff, independent or otherwise. This point is explored in CIGNA's brief in support of its motion to dismiss, and, in abbreviated form, infra. Contrary to Plaintiff's suggestion, the state statutes and regulations cited in the Complaint do not specify

5

what benefits must be paid by a claims administrator and/or insurer under an ERISA plan. (CIGNA Mot. To Dismiss Brf. at 17-18.)  Indeed, as a matter of New Jersey law, these laws provide no private right of action to Plaintiff at all.  (Id. at 13-15.)  The relevant point to this remand motion, however, is that Plaintiff's claim of an independent duty owed to it under New Jersey statutes by these Defendants is simply not correct.  Indeed, pursuant to the discussion of the New Jersey regulations and statutes in CIGNA's motion to dismiss, there is nothing to preempt.  If there were such a duty, it would not be independent of the ERISA plans at issue, and would, therefore, be preempted and therefore within this Court's ERISA jurisdiction.

Plaintiff filed the instant motion and a letter with the Court requesting that CIGNA's motion to dismiss be denied and that the Court should decide this remand motion instead. CIGNA responded, stating, inter alia, that the motions should properly be considered together in light of the substantial overlap of the issues.  Plaintiff has provided no substantive response to the motion to dismiss as of the filing of this brief.

## LEGAL DISCUSSION

### I.    ERISA PREEMPTION

#### A.    Complete Preemption under ERISA Section 502

As quoted, supra, the Supreme Court of the United States expressly held in Pilot Life that the "carefully integrated civil enforcement provisions" in Section 502(a) of ERISA, 29 U.S.C. § 1132(a), set forth the "exclusive" remedies available for a violation of the "prompt and fair claims administration procedures" set forth in the statute, including the allegedly erroneous denial, non-payment or underpayment of benefits available under an ERISA-governed health benefits plan. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).  Indeed, the exclusivity and preemptive force of ERISA's remedies are so strong that any purported state-law cause of action amounting to an alternative mechanism for enforcing a claim to ERISA-governed benefits

6

is deemed a claim under the federal statute, trumping the well-pleaded complaint rule, and creating federal question removal jurisdiction in this Court.  See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987) (preemptive force of ERISA operates to "convert[]" ordinary state law claims into federal claims for purposes of the well-pleaded complaint rule); see also Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004) (holding that "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted" and removable to federal court).  Accordingly, "causes of actions that fall within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court."  Id.

In Davila, two members of ERISA-governed plans asserted state-law claims against managed care companies seeking damages resulting from injuries allegedly sustained as a result of the defendants' decision not to cover treatments recommended by the members' treating physicians.  Id. at 204-05.  There, the Supreme Court held that the state-law claims were completely preempted by ERISA and thus removable to federal court, because the defendants' liability for any damages "would exist here only because of petitioners' administration of ERISA-regulated benefit plans," and thus the defendants' "potential liability under [state law] in these cases . . . derives entirely from the particular rights and obligations established by the benefit plans."  Id. at 213.

ERISA contains two statutory provisions that preempt state law causes of action.  The one that this motion is concerned with is Section 502(a), 29 U.S.C. § 1132(a), which sets forth a civil enforcement scheme and which forecloses and supplants any state law claim that falls within its zone of influence.  In Pilot Life, the Supreme Court described Section 502(a) as setting forth a "comprehensive" civil enforcement scheme.  481 U.S. 41, 54 (1987).  The High Court

7

found that this scheme represented Congress's "careful balancing" of the interests involved --
that of fairness to plan beneficiaries and the fostering of employee benefit plans.  Id.  This
balancing is, of course, the supreme law of the land, displacing any state law that would either
expand or contract the rights and liabilities of the various parties.

ERISA's second preemption provision, which provides what is known as "express" or
"conflict preemption," appears in Section 514(a), 29 U.S.C. § 1144(a).  Section 514 preempts
"any and all state laws" that "relate to any employee benefit plan."  Section 514 is concerned
with conflict preemption, rather than the complete preemption doctrine of Section 502 (discussed
immediately supra).  It is Section 502 that supports removal jurisdiction in this Court.  Section
514 is discussed here only because of Plaintiff's misplaced argument based upon the "savings
clause" of Section 514(b)(1), 29 U.S.C. § 1144(b)(1) and the character of the New Jersey laws in
question as regulating insurance.

ERISA's preemptive effect has few parallels in this country's laws.  "[A]ny state-law
cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy
conflicts with the clear congressional intent to make the ERISA remedy exclusive and is
therefore preempted."  Davila, 542 U.S. at 209.  Indeed, ERISA's preemptive effect extends to
both common law and statutorily based causes of action.  See, e.g., Finocchiaro v. Squire
Corrugated Container Corp., 2007 U.S. Dist. LEXIS 12642, ** 7-8 (D.N.J. Feb. 22, 2007)
("'ERISA preemption extends to state common-law causes of action as well as state regulatory
statutes, and claims brought under state-law doctrines that do not explicitly refer to employee
benefit plans are nonetheless preempted when the claims arise from the administration of such
plans.'") (quoting Scott v. Gulf Oil Corp., 754 F.2d 1499, 1504 (9th Cir. 1985)).

#1428003 v1
106782-66179

The federal courts have found complete preemption under Section 502 in a wide range of contexts.  See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-67 (1987) (state common law causes of action asserting improper processing of a claim for benefits under an employee benefit plan are removable under complete ERISA preemption to federal court); Smith v. Dunham-Bush, Inc., 959 F.2d 6, 8-12 (2d Cir. 1992) (claim for breach of oral promise to pay benefit removable under complete preemption).

### B.    The "Savings" and "Deemer" Clauses

ERISA's preemptive scheme, though nearly absolute, does contain certain narrow exceptions.  Pursuant to the "savings clause" embodied in Section 514(a), 29 U.S.C. § 1144(b)(2)(A), state laws "regulating insurance, banking or securities" remain viable, even if they would otherwise be subject to preemption under ERISA.  The shield provided by the "savings clause" is, however, narrow in scope.  The "savings clause" of Section 514 does not limit the preemptive sweep of Section 502's "comprehensive" and "deliberately expansive" civil enforcement scheme.  Indeed, "even a state law that can arguably be characterized as 'regulating insurance' will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."  Davila, 542 U.S. at 217-18.

Thus, to the extent a state law regulating insurance provides a civil remedy for the improper processing of a claim for benefits, it is preempted notwithstanding the applicability of the "savings clause."  Pilot Life Ins. Co., 481 U.S. at 57.  For example, the Third Circuit found that the Pennsylvania bad faith insurance claim statute was preempted, despite its obvious application to insurance, holding that "[E]ven if [Pennsylvania's bad faith insurance claim statute] were found to 'regulate insurance' under the saving clause, it would still be preempted because the punitive damages remedy supplements ERISA's exclusive remedial scheme."  Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134, 141 (3d Cir. 2004); Prudential Ins. Co. of Am. v.

9

National Park Med. Center, Inc., 413 F.3d 897, 513-14 (8th Cir. 2005) (Arkansas Patient

Protection Act "saved" from preemption under Section 514(b), but civil penalties preempted

under Section 502 with respect to suits that could have been brought under ERISA).

Plaintiff's principle authority, Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S.

329 (2003), is completely off point.  That case deals with Section 514, 29 U.S.C. § 1144

"conflict" preemption.  As discussed, conflict preemption under Section 514 is not germane to

this motion.  Moreover, the Kentucky Association case deals almost exclusively with the issue of

whether the state statute at issue there regulates insurance within the meaning of the savings

clause.  The Court need not reach that issue on this motion.  Even if the state laws cited here do

regulate insurance, they are nonetheless subject to complete preemption because they conflict

with Section 502's civil enforcement scheme remedial scheme (assuming Plaintiff's

interpretation of them was correct).

An important limitation on the savings clause is the so-called "deemer clause" of Section

514(b)(2)(B), 29 U.S.C. § 1144(v)(2)(B).  The "deemer clause" provides that self-funded

employee benefit plans will not be deemed insurance for the purposes of the "savings clause"

exception to ERISA preemption.  The effect of the "deemer clause," therefore, is that "self-

funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the

plans." FMC Corp., 498 U.S. at 61; Daley v. Marriott Int'l, Inc., 415 F.3d 889, 894-95 (8th Cir.

2005) (Nebraska Mental Health Parity Law is preempted with respect to self-funded plans, due

to "deemer clause"); Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc., 413 F.3d 897, 912

(8th Cir. 2005) ("The Supreme Court has noted repeatedly that because of the deemer clause,

statutes that indirectly regulate self-funded ERISA plans are not saved from preemption to the

10

extent such statutes apply to self-funded plans.").  Of course, the majority of the plans at issue in this case are self-funded.   (Hendrick Decl. 2.)¶

## II.   REMOVAL JURISDICTION UNDER ERISA SECTION 502

### A.   Section 502(a)

As already discussed, complete preemption under Section 502 requires the Court to look to the substance of putative state-law claims to decide whether they fall within ERISA's "comprehensive enforcement scheme" and thus may be removed regardless of well-pleaded complaint rule.  Pryzbowski v. US Healthcare, Inc., 245 F.3d 266, 274 (3d Cir. 2001)  (federal court to look "beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law") (internal quotations omitted).  The Third Circuit set forth a two-part analysis in Pascack Vally Hosp., Inc. v. Local 464A UFCS Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004).  A claim pled under state law terms is removable as a federal ERISA question under Section 502 if (i) the plaintiff could have brought the claim under ERISA and (ii) the claim is not independent of the claim for benefits.  Id. at 400.

Section 502(a), states who may bring a claim and what type of claim falls within it:

A civil action may be brought --

(1) by a participant or beneficiary …

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

11

29 U.S.C. § 1132(a) (emphasis added).  In <u>Pilot Life</u>, the Supreme Court wrote that:

> "The six carefully integrated civil enforcement provisions found in
> § 502(a) of the statute as finally enacted . . . provide strong
> evidence that Congress did not intend to authorize other remedies
> that it simply forgot to incorporate expressly."
>
> The deliberate care with which ERISA's civil enforcement
> remedies were drafted and the balancing of policies embodied in
> its choice of remedies argue strongly for the conclusion that
> <u>ERISA's civil enforcement remedies were intended to be
> exclusive</u>.  This conclusion is fully confirmed by the legislative
> history of the civil enforcement provision.

481 U.S. at 54 (internal citations omitted) (emphasis added).

### B.    Plaintiff Could Bring an ERISA claim under Section 502 as an Assignee

Thus, under Section 502, plan participants and beneficiaries may sue for benefits and

participants, beneficiaries and fiduciaries may sue for equitable relief.  <u>Vaimakis v. United

Healthcare/Oxford</u>, 2008 U.S. Dist. LEXIS 60435 at *8 (D.N.J. Aug. 8, 2008) ("By its terms,

only a participant or beneficiary of an ERISA plan may bring suit to recover benefits due under

an ERISA plan.").  However, a provider also has standing and may bring a claim where the plan

participant or beneficiary has assigned to a provider that individual's rights to benefits under the

plan.  <u>Wayne Surgical Center v. Concentra Preferred Sys., Inc.</u>, 2007 U.S. Dist. LEXIS 61137 at

*10 (D.N.J. Aug. 20, 2007).

Plaintiff approaches the issue of assignment "artfully," as <u>Pryzbowski</u> put it.  245 F.3d at

274.  The complaint states conclusorily that "the claims in this lawsuit do not arise under ERISA,

do not arise under any assignment of benefits and do not arise under any purported federal

common law doctrine." (Complaint at 3 ¶ 7.)   In its brief, Plaintiff states that "brings this action

on its own, not as an assignee of benefits from CIGNA's members or its dependants."

(Plaintiff's Brf. at 1.)  Elsewhere, Plaintiff states that it is "not bringing its claims based upon

#1428003 v1
106782-66179

assignments of benefits by the patients, and therefore is not a beneficiary." (Plaintiff's Brf. at 10.) The Court will note that Plaintiff does not deny that its patients assigned their benefits under the benefit plans to it. In fact, they did. (Hendrick Decl. ¶ 3.) Plaintiff may profess to bring claims that do not depend on its status as a beneficiary. CIGNA contends that these claims are really claims for benefits and thus within the civil enforcement scheme of Section 502(a). That is an issue to be decided on this motion.

As a factual matter, however, Plaintiff is an assignee of the plan beneficiaries' benefits at issue in this case.[3] Id. Therefore, Plaintiff could bring its claims under Section 502, and the first prong of <u>Pascack</u> is satisfied. The question then becomes, under the second prong, whether some independent legal duty would support the claim or whether it is in fact an ERISA claim in state law clothing.

**C.    Plaintiffs Claims are not Supported by an Independent, non-ERISA Legal Duty.**

**(i)    The State Common Law Claims**

As noted, Counts One and Four of the Complaint allege state common law claims for unjust enrichment and misrepresentation. Numerous cases have found such causes of action to be subject to complete ERISA preemption. As the Sixth Circuit observed in <u>Penny/Ohlmann/Neiman, Inc. v. Miami Valley Pension Corp.</u>, 399 F.3d 692, 703-04 (6th Cir. 2005), a claim based upon misrepresentation against a bank serving as a fiduciary (like CIGNA here), "would result in the use of state tort law as an end-run around ERISA's exclusive enforcement mechanism." Plaintiff pleads his misrepresentation claim alternatively as

---

[3]    The Court will note that the factual point of Plaintiff's status as an assignee of benefits is different from the question argued in CIGNA's motion to dismiss--whether Plaintiff's failure to <u>plead</u> the assignment means it has failed to state a claim under ERISA. If the Court grants the motion to dismiss, that dismissal will be without prejudice to plead a proper ERISA claim, which would include allegations that Plaintiff had standing pursuant to the assignment.

13

"intentional and/or negligent misrepresentation."  The Third Circuit addressed allegations of

negligence in the context of ERISA benefits in <u>DiFelice v. Aetna U.S. Healthcare</u>, 346 F.3d 442,

452 (3d Cir. 2003), writing:  "Because under our most recent controlling precedent, <u>Pryzbowski</u>,

DiFelice's claim that Aetna was negligent in determining that the special tube was 'medically

necessary' could have been the subject of a suit under section 502(a) for benefits due under the

Plan, his claim is preempted by ERISA."  <u>Id.</u> at 464.

       Here Plaintiff has alleged in the Complaint that

> 3.    Defendant's intentional and/or negligent false promise to
> pay claims appropriately and its intentional and/or negligent
> manipulation and skewing of the data utilized in determine the
> UCR fees, <u>which resulted in payment to the plaintiff of less than
> the appropriate UCR fee</u> was unknown to the plaintiff at the time it
> agreed to perform the medical services for the subscribers and/or
> their dependents.  Plaintiff reasonably expected and relied upon
> what it believed to be defendant's honest representations that the
> plaintiff would be properly <u>compensated in accordance with the
> pre-certification coverage</u>.
>
> 4.    [Plaintiff's] reliance on these representations was to its
> substantial detriment and as a result the plaintiff suffered
> significant money damages.

(Complaint, Count 4 ¶¶ 3-4 (emphasis added).)  The only "significant money damages" Plaintiff

can point to is the difference between what CIGNA determined was owed under the terms of the

beneficiaries' ERISA plans and what Plaintiff believed it was owed under these ERISA plans.

This is quintessentially a claim for benefits, squarely within Section 502's civil enforcement

scheme, and this claim is therefore an ERISA claim within this Court's subject matter

jurisdiction.

       Plaintiff's claim of an independent claim arising from any alleged misrepresentation is

further frustrated by the phrase in the Complaint, underlined above, that CIGNA's alleged

misrepresentation involved the statement that Plaintiff would be paid "in accordance with its pre-

14

certification coverage." (Id. ¶ 3.)  As the complaint itself confirms, pre-certification only involves a statement that a particular claim will be paid in accordance with the terms of the policy.  (See also Nason Cert. Exh. A (SPD at 28) (pre-certification required for certain benefits to be covered "under this policy").)  Plaintiff's real dispute is that the payment it received was not "in accordance with [CIGNA's] pre-certification coverage", i.e., that it was owed more under the terms of the plans.

Plaintiff's unjust enrichment in Count One is convoluted, for reasons discussed in CIGNA's motion to dismiss.  It too, however, is based upon Plaintiff's assertion that it is entitled to more money than it received for treating its assignors, the plan beneficiaries.

> 2.     At all relevant times, defendant consistently and systematically refused to pay plaintiff correctly for the medical services it provided to the subscribers/dependents contrary to its insurance coverage, statutory and regulatory obligations.
>
> 3.     The defendant was paid premiums by its subscribers for out-of-network benefits and, pursuant to said premiums, was legally obligated to provide such coverage to its subscribers.

(Complaint, Count 1 ¶¶ 2-3.)  This Count goes on to allege that Plaintiff conferred a benefit on CIGNA by treating the plan beneficiaries and that, because CIGNA has not paid for that treatment, CIGNA has been unjustly enriched.  (Id. ¶ 4.)  CIGNA did not, of course, receive a benefit by virtue of the treatment itself.  Plaintiff did not, after all, provide medical treatment to CIGNA.  CIGNA owed coverage subject to the terms of the various plans, however.  There could only be an unjust benefit to the extent Plaintiff absorbed the cost of treatment that CIGNA withheld contrary to the terms of that coverage.  Here too, a close reading of the state law claims shows that this is a benefits claim lying in the heartland of ERISA's Section 502(a) civil enforcement scheme.

#1428003 v1
106782-66179

(ii)      **The State Statutory and Regulatory Claims**

Plaintiff characterizes its claims under the HINT, HCAPPA and Emergency Services Regulations as independent of any claim that could be brought under ERISA.  This is not correct; the claims that Plaintiff raises under these authorities fall comfortably within ERISA's complete preemption doctrine.  It is worth noting, however, that these state laws provide no private right of action and, indeed, do not even establish the extra-contractual duties the Plaintiff claims for them.  (See CIGNA's Motion to Dismiss Brf. at 12-15.)  The irony in Plaintiff's position, therefore, is that the laws Plaintiff claims create a duty independent of ERISA, in fact create no duty at all.

The implications of Plaintiff's position is that a providor/assignee of rights under an ERISA plan can make wild claims regarding the applicability of state statutes under the guise of asserting an independent claim and oust this Court of jurisdiction and this ERISA claims administrator of its Congressionally mandated federal forum.   But, even assuming Plaintiff's contentions regarding the substance and application of these state laws were accurate, these laws would plainly alter, supplement or enlarge CIGNA's duties under the plans.  Therefore, if they did create a duty running to Plaintiff from CIGNA, they are preempted under Section 502 as interfering with its comprehensive enforcement scheme.  As discussed, where there is complete preemption under Section 502, it will apply without regard to whether these laws regulate insurance under the savings clause of Section 514(b)(2)(A).  In any event, the savings clause has no application to 15 of the 28 self-funded plans involved in this case.  Section 514(b)(2)(b), 29 U.S.C. § 1144(b)(2)(B).

One may read the state statutes and regulations raised by Plaintiff in vain to find any suggestion that they create a duty to Plaintiff.  For ease of reference, they are summarized in this table:

16

| Law/Regulation | Summary | Remedy |
|---|---|---|
| N.J.S.A. 17B:30-23 | Timetable for the Comm'r to establish a timetable for implementation of electronic claims administration--no enforcement provision at all | none |
| N.J.S.A. 17:48-8.4 | Standards for processing electronic claims | civil penalty payable to Comm'r or State |
| N.J.S.A. 17:48A-7.12 | Standards for processing electronic claims | civil penalty payable to Comm'r or State |
| N.J.S.A. 17:48E-10.1 | Standards for processing electronic claims | civil penalty payable to Comm'r or State |
| N.J.S.A. 17B:26-9.1 | Standards for processing electronic claims | civil penalty payable to Comm'r or State |
| N.J.S.A. 17B:27-44.2 | Standards for processing electronic claims | civil penalty payable to Comm'r or State |
| N.J.S.A. 26:2J-8.1 | Standards for processing electronic claims | civil penalty payable to Comm'r or State |
| N.J.A.C. 11:22-5.6(b), | Standards for coverage under insurance contracts | none, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |
| N.J.A.C. 11:24-5.3(b), | Standards for coverage of emergency and urgent care | none, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |
| N.J.A.C. 11:24-5.1(a), | Standards for provision of health care services | none, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |
| N.J.A.C. 11:24-9.1(d) | Standards for the statement of members' rights | none, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |

17

#1428003 v1
106782-66179

The Order of Commissioner Goldman, A07-59 dated July 23, 2007, (the "Goldman Order") which Plaintiff cites[4] actually undermines Plaintiff's position.  In the Goldman Order, the Commissioner of the Division of Banking and Insurance ("DOBI") directs Aetna Health, Inc. to comply with certain of the mandatory benefits statutes listed in the table above.  The Goldman Order removes any lingering doubt that enforcement of these benefit statutes is conducted as regulatory proceeding by DOBI, not through private litigation by providers in the Courts.

In short, the state statutes create no cause of action and no "independent" duty owed by CIGNA to Plaintiff that can be enforced in a civil proceeding.  If they did create any such duties, which they do not, enforcement of them would conflict with Section 502(a)'s remedial scheme and be subject to complete preemption.

Not surprisingly, state laws creating private causes of action to enforce state minimum benefits laws exist in various jurisdictions.  The federal courts have routinely found that these laws are completely preempted under Section 502(a), for the obvious reason that such laws would interfere with the Congressionally-mandated system under ERISA.  E.g., Prudential Ins. Co. of Am. v. National Park Med. Center, Inc., 413 F.3d 897, 513-14 (8th Cir. 2005) (civil penalties under Arkansas Patient Protection Act preempted under Section 502 with respect to suits that could have been brought under ERISA); Fink v. Dakotacare, 324 F.3d 685, 689 (8th Cir. 2003) (claim under South Dakota's unfair insurance practices act is preempted because the remedy conflicts with ERISA civil enforcement remedies); see also Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134, 141 (3d Cir. 2004) (assuming Pennsylvania punitive damages statute

---

[4]        Plaintiff states that the Goldman Order is attached as Exhibit A to its brief.  Neither the electronically filed copy of the brief, the other papers submitted in support of the Motion to Remand nor any document served on CIGNA in this action contain that document.  We have relied upon the document corresponding to this description submitted by Plaintiff in North Jersey Brain & Spine Center v. Healthnet, Inc., Civ. No. 08-4414 (JAG) (Dckt. No. 12) in support of a similar motion to remand.  The motion in the Healthnet case was apparently resolved by consent.

18

regulates insurance, it is nevertheless preempted because the remedy supplements ERISA's

exclusive remedial scheme); Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir.

1988) (California statute allowing for compensatory and punitive damages preempted without

regard to the savings clause because the court found that it supplemented the ERISA civil

enforcement remedies); Jordan, Pflepsen & Goldberg, Handbook on ERISA Litig. § 3.06[C] at

3-56 ("courts have generally held that state insurance statutes providing private rights of action

are preempted because they infringe upon the exclusive civil enforcement remedies provided in

ERISA § 502").

      This result is obvious with respect to minimum-benefit mandates under state law.  It is

also true with respect to claims processing requirements under state law.  Indeed, in Pryzbowski

itself, the Court of Appeals rejected that argument that a delay in claims processing created a

claim outside ERISA's scope.  245 F.3d at 273 ("ultimate" question is "whether the claim

challenges the administration of or eligibility for benefits, which falls within the scope of

§ 502(a) and is completely preempted") (emphasis added).  As the Court will be aware, ERISA

and the regulations promulgated thereunder have extensive, complex and reticulated claims

processing requirements.  For example, like the New Jersey regulation Plaintiff cites, federal

ERISA regulations require that claims be processed within a certain period of time.  29 C.F.R.

§ 2560.503-1(f).  Numerous other parallels exist between the New Jersey and ERISA

requirements.  Compare 29 C.F.R. § 2560.503-1(h) (internal appeal procedures) with N.J.S.A.

§ 17B:26-9.1(e) (same); compare 29 U.S.C. § 1024(b) (obligation to provide summary plan

description) with N.J.A.C. § 11:24-9.1 (obligation to provide "summary of the evidence of

coverage").   In 29 C.F.R. § 2560.503-1(g), the ERISA regulations specify what a benefit

determination must contain, including "[t]he specific reason or reasons for the adverse

19

determination." The alleged omission of this information is among Plaintiff complaints under its New Jersey HINT and HCAPPA claims. (Complaint page ¶ 5 (iii-v).)

Of course, Section 502(a) itself provides that beneficiaries (and thus their assignees) may bring suit "to enforce any provisions of this title or the terms of the plan." Plaintiff's theory of liability under the New Jersey claims processing laws, if it held water at all, would plainly duplicate, supplement and/or conflict with this entire body of ERISA law and its civil enforcement scheme. It is, therefore, completely preempted under Section 502. See Kurtek v. Capital Blue Cross, 219 F. App'x 184, 186 (3d Cir. 2007) (rejecting argument that plaintiffs could not have brought their claims under §502 because they were challenging the delayed approval of a medical procedure rather than a denial of benefits, and holding that plaintiffs "could have sought an injunction under §502(a) to accelerate the approval . . . or could have paid for the [procedure] and then sought reimbursement.").

Indeed, this was the focus of the Supreme Court's opinion in Davila. 542 U.S. 200. In that case, a plan beneficiary brought suit under the Texas Health Care Liability Act, which imposed liability for medical consequences of a negligently erroneous denial of benefits. The Court of Appeals found that the claimants "are not seeking reimbursement for benefits denied them," but rather request "tort damages" arising from "an external, statutorily imposed duty of 'ordinary care." The Supreme Court rejected this distinction. It makes no difference, the High Court held, what label the claimant puts on its theory. Id. at 214. "Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism." Id. at 214-15. Indeed, as the Davila Court noted, many of the landmarks of Supreme Court Section 502 preemption jurisprudence involve failed claims of independent duties under various state

#1428003 v1
106782-66179

laws. Id. (citing Pilot Life, 481 U.S. at 43 (compensatory and punitive damages); Metropolitan Life, 481 U.S. at 61 (mental anguish);  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 136 (1990) (punitive damages, mental anguish)).

As noted, the state statutes and regulations Plaintiff cites provide it with no right of action or remedy at all.  But it would be completely irrelevant even if they did, even if those state rights were more generous than those it possessed under ERISA.   The federal courts have been very clear that even though ERISA's civil enforcement scheme may augment, reduce or even eliminate a party's remedy, this is by Congressional design and "is not germane to [a] preemption analysis." Cannon v. Group Health Serv., 77 F.3d 1270, 1274 (10th Cir. 1996); see also Muse v. IBM, 103 F.3d 490, 495 (6th Cir. 1996) ("The nature of ERISA preemption is not altered by the fact that some plaintiffs may be left without a meaningful remedy.").  Indeed, the Third Circuit has cautioned that "[i]t is for Congress and not the courts to decide whether it is sound policy for our health care system to limit or channel the relief available or whether ERISA should allow for broader remedies in the world of managed care." Pryzbowski v. US Healthcare, Inc., 245 F.3d 266, 282 (3d Cir. 2001).

The claims in this case, to the extent claims are stated at all, plainly arise under ERISA's civil enforcement remedies in Section 502.  CIGNA's obligation to pay benefits derives solely from this its role as insurer and claims administrator of the plans.  The Supreme Court's Davila case is on point.  542 U.S. 200 (2004).  The Supreme Court held that the state-law claims were completely preempted by ERISA and thus removable to federal court, because the defendants' liability for any damages "would exist here only because of petitioners' administration of ERISA-regulated benefit plans," and thus the defendants' "potential liability under [state law] in these cases . . . derives entirely from the particular rights and obligations established by the

21

benefit plans." Id. at 213.  CIGNA's determination of the amount of benefits owed was based on the terms of the plans themselves and review in this Court of that determination will likewise require application of the plan terms.

Plaintiff labors to argue that the state laws it cites create a separate, non-ERISA obligation it may assert against CIGNA.  This is impossible to square with the plain language of Davila.  "[A]ny state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted" Id. at 209.  Plaintiff's state common law claims, which it now says "may be completely preempted" (Complaint at 7 n.1), are of a type that is routinely removed pursuant to ERISA's complete preemption doctrine.  Such claims, "no matter how couched," Pryzbowski, 245 F.3d at 273, are plainly and unequivocally preempted.

CIGNA does not object to Plaintiff's assertion that it can be sued by individuals for claims that are truly independent of its obligations as an ERISA plan claims administrator or insurer.  (Plaintiff's Brf. at 8 (citing Davila).)  Plaintiff's problem is that is has asserted no such claim.  Plaintiff's argument under this heading (Point 2 at page 8) boils down to the assertion that "there obviously is an 'independent legal duty'" because of the state statutes.  But the mere existence of a state law cannot mean that the duty imposed thereunder is "independent" within the Supreme Court's meaning in Davila.  This suggestion would nullify the entire body of ERISA preemption law.  The issue, as stated in Davila, is whether a state law obligation is "independent of ERISA or the plan terms."  542 U.S. at 208.  Here it manifestly is not--Plaintiff is suing to recover benefits it claims CIGNA owes for services rendered to plan beneficiaries.

The claims here derive from the services rendered to ERISA plan beneficiaries and the obligation to pay for those services.  Plaintiff contends that state law mandates that "CIGNA is

22

obligated to pay [Plaintiff] 100% percent of plaintiff's billed amount" (Plaintiff's Brf. at 3), and that Plaintiff may bring a private civil lawsuit to enforce this provision.   How Plaintiff can argue that this proposition would not "supplement or supplant the ERISA civil enforcement remedy" is simply incomprehensible.

### (iii)   Plaintiff's Claims will Require Interpretation of the Terms of the Plans

None of Plaintiff's claims can be assessed without reference to the terms of the employee benefit plans at issue here and the Complaint is replete with examples of references to plan terms.   Consequently, Plaintiff's claim that its causes of action are independent of ERISA for purposes of Section 502 complete preemption are barred by a long line of ERISA case law.

The Supreme Court's statement in Davila, rejecting a claimant's reliance on a state statute, is compelling on the facts of this case.   Notwithstanding the invocation of the state THCLA statute:   "interpretation of the terms of respondents' benefit plans forms an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans.   Petitioners' potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans . . . respondent's THCLA causes of action are not entirely independent of the federally regulated contract itself."   Davila, 542 U.S. at 213-14.  Cf. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 217 (1985) (state-law tort of bad-faith handling of insurance claim pre-empted by LMRA § 301, since the "duties imposed and rights established through the state tort . . . derive[d] from the rights and obligations established by the contract"); Steelworkers v. Rawson, 495 U.S. 362, 371 (1990) (state-law tort action brought due to alleged negligence in the inspection of a mine was pre-empted, as the duty to inspect the mine arose solely out of the collective-bargaining agreement).

23

This basic law was rearticulated as recently as this spring in D'Alessandro v. Hartford Life & Accident Ins. Co., 2009 U.S. Dist. LEXIS 37048, *9-10 (D.N.J. May 1, 2009) in which Judge Pisano found that "Plaintiff's NJCFA claim is preempted by ERISA because the claim relates to the employee benefit plan since it requires reference to the policy . . . Specifically, in her Complaint Plaintiff states that the claim relates to the 'performance by the defendant in the delivery of benefits due to the plaintiff under that policy of insurance' which would require interpretation of the policy."  See also Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., 2007 U.S. Dist. LEXIS 61137 *21-2 (D.N.J. Aug. 20, 2007) (claim against health insurer for unjust enrichment, tortuous interference and NJCFA "requires the Court to consider in detail the plans to which [the provider] received an assignment of benefits").

These District of New Jersey rulings were made in the context of a Section 514 conflict preemption analysis, but reference to the discussion in Davila and other authorities cited above show that the necessity to refer to plan terms is an important consideration for Section 502 complete preemption analysis as well.  542 U.S. at 213-14.  The Supreme Court found that, because interpretation of the plan was necessary to adjudicate state law claim, "Hence, respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.  We hold that respondents' state causes of action fall 'within the scope of' ERISA § 502(a)(1)(B), and are therefore completely pre-empted by ERISA § 502 and removable to federal district court."  Id. at 214  (internal citations omitted).

As already noted, the concept of "usual, customary and reasonable" or "UCR" payment rates features prominently in Plaintiff's claims.  Paragraph two (page 2) alleges "CIGNA was obligated to pay [Plaintiff] 100% of plaintiff's usual, customary and reasonable ("UCR") fees."

The concept of UCR payment of fees is a key term of all employee health benefit plans. Obviously, CIGNA and Plaintiff disagree about whether and to what extent Plaintiff's bills should be adjusted to reflect correct UCR amounts under the plan, and determining the correct UCR will require interpretation of the plan.

Thus, paragraph 4-5 (page 2-3), the Complaint states:

> 4.    The UCR fee, often referred to as the "reasonable and customary" fee, is defined, or is reasonably interpreted to mean, the amount that 'out-of-network' providers like the plaintiff, normally charge to their patients in the free market, i.e., without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the insurance company's or CIGNA's subscribers.  Moreover, the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

> 5.    With respect to the services at issue rendered to the subscribers/dependents, defendant arbitrarily refused to pay the plaintiff correctly for such services.

(Complaint, page 2-3, ¶¶ 4-5.)

Of course, the concept of the UCR fee and how it is defined is an important term of the ERISA plans at issue here.  (Nason Exh. A (SPD at 66).)  The plans set forth how the UCR rate will be applied (id.), and comparison between Plaintiff's version and the plan version will be necessary to determine whether CIGNA abused the discretion it possesses under the plan terms in applying this critical provision.  (See Complaint ¶ 4 (purporting to state how UCR is "defined, or is reasonably interpreted").)  Likewise, whether CIGNA "refused to pay plaintiff correctly" (Id. ¶ 5) (emphasis added) requires an interpretation of this plan term.

In Count One, the necessity of plan interpretation is also clear.  "The defendant was paid premiums by its subscribers for our-of-network benefits and, pursuant to said premiums, was legally obligated to provide such coverage to its subscribers."  (Id. page 3, ¶ 3.)  What Plaintiff describes here is an insurance contract.  The insurance contracts at issue here is an integral part

#1428003 v1
106782-66179

of the employee benefit plans, and Plaintiff correctly states that CIGNA's obligations spring

from its duties under these plans.  A correct understanding of these duties and whether CIGNA

has discharged them is, again, a matter of plan interpretation.

Adjudicating Count Four, for misrepresentation, likewise will require application of plan

terms.  Plaintiff claims that CIGNA has "refused to pay the subject claims appropriately" and has

"used and/or manipulated data that understated the UCR fees for the medical services provided."

(Id. page 8, ¶ 2.)  What is "appropriate" payment of claims obviously depends on the terms of the

plans and those terms appear in the plan documents.   (Nason Cert. Exh A (SPD at 66).)

Whether data used to calculate UCR payments was properly employed will rely on the

interpretation of the UCR concept as employed by the plan.  As noted, pre-certification merely

means that the provider has been advised that it will be paid in accordance with the terms of the

plan.  The Complaint itself shows that Plaintiff understands this.  (Id. page 8, ¶ 3 (whether

"plaintiff would be properly compensated in accordance with the pre-certification of coverage").)

The plan documents confirms this.  (Nason Cert.  Exh. A (SPD at 28) (pre-certification required

for certain benefits to be covered "under this policy").)

Other important plan terms appear in the Complaint.  Not surprisingly, coverage is

limited to payment for "medically necessary" treatment.  This term is defined in the plans.

(Nason Cert. Exh. A (SPD page 64-65).)  Plaintiff's Complaint alleges that "it cannot be

reasonably disputed that all of the surgical procedures performed were 'medically necessary' and

some were emergency procedures."  (Complaint page 2, ¶3.)  Like with the UCR issue, and pre-

certification, a claim of entitlement under the terms of the plans must be established  before any

of the purported state law claims are even reached.

#1428003 v1
106782-66179

Again returning to Davila, the Supreme Court couched this as an issue of causation. The Texas statue provided for liability for damage caused by a negligent denial of a claim. Justice Thomas reasoned for the Court that, if the claim had been properly denied under the terms of the plan, the alleged harm would be caused by the terms of the plan, not the denial. 529 U.S. at 212-13. It is clear from the repeated invocation of key plan terms and concepts that Plaintiff was unable to draft its pleading without reference to issues of plan interpretation. If CIGNA was substantively justified in denying or reducing the claims as it did under the terms of the plan, and if it did so in the manner and time specified in the plan and the ERISA statute and regulations, Plaintiff's state common law, statutory and regulatory causes of action must fail. Therefore, this case will unavoidably require interpretation and application of the plan and the federal law on which it is based, and this case was properly removed under Section 502.

### D.   The New Jersey Statutes and Regulations are Not Applicable to the Self-Funded Plans in this Case.

Plaintiff relies heavily on its argument that the New Jersey Statutes and regulations regulate insurance and, it is argued, are saved from preemption under the "savings clause" of Section 514. Section 514(b)(2)(A) provides that "nothing in this title[5] shall be construed to exempt or relieve any person from any law of any State which regulated insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). As discussed, supra in this memorandum (see pp. 9-10),

---

[5]    The Court will be aware that Section 514, in which the savings clause appears, creates conflict preemption, rather than the complete preemption of Section 502. The savings clause operates with respect to Section 502 as well, however, because of its reference to "this title." As discussed elsewhere in this brief, however, even where the savings clause is applicable to insured ERISA plans, it is trumped by Section 502 to the extent the state insurance law creates a private cause of action. See Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134, 141 (3d Cir. 2004) (assuming Pennsylvania punitive damages statute regulates insurance, it is nevertheless preempted because the remedy supplements ERISA's exclusive remedial scheme).

#1428003 v1
106782-66179

it is settled law that the savings clause does not save state insurance laws which create a cause of action and thus interfere or supplement the civil enforcement of Section 502.

As to a majority of the plans at issue in this case, however, the savings clause has no application at all.  Fifteen of the twenty-eight plans at issue here are self-funded.  Self-funded plans are deemed not to involve insurance under the "deemer clause" of Section 502(b)(2)(B).  29 U.S.C. § 1144(b)(2)(B).  As to these plans, the savings clause does not apply.  Id.  Plaintiff's arguments regarding the savings clause are irrelevant to these fifteen plans and beneficiaries as a result.  The deemer clause and the fact that these plans are self funded provides a second ground to find that the state statutes and regulations upon which Plaintiff relies are preempted as to these fifteen plans.

III.   **EVEN IF THE COURT ACCEPTED PLAINTIFF'S ARGUMENTS, TWO OF THE COUNTS OF THE COMPLAINT AND FIFTEEN OF THE CLAIMS AT ISSUE CANNOT BE REMANDED AND THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REST OF THE CASE.**

As discussed at length in this memorandum, Plaintiff's arguments that its claims escape ERISA preemption are without merit.  But, as also noted, Plaintiff fails even to present argument that Counts One and Four should be remanded and no argument exists that these Counts are not subject to complete ERISA preemption.  As discussed above, the precedents of the Third Circuit and the Supreme Court make it clear that these state, common law causes of action are preempted under Section 502 and were properly removed to this Court.  The discussion supra also establishes that as to 15 of 28 of the plans at issue here are self-funded.  (Hendrick Decl. ¶ 2.)  Self-funded plans are excepted from the savings clause, which is itself an exception to the general rule of ERISA preemption.  Therefore, to the extent Plaintiff's argument rest on the proposition that ERISA preemption is precluded due to the savings clause, it is not well-taken.  Therefore, as to all of the claims with respect to Counts One and Two, and as to 15 of the claims

28

as to all Counts -- even if Plaintiff's savings clause argument had any merit -- these claims are subject to complete preemption and this Court has subject matter jurisdiction over them.

Under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), a federal Court with jurisdiction over a portion of the claims in a case, it may also exert its jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."   Plaintiff has brought its claims as a block, not even delineating which plan or patient was which in the Complaint.  The substantive allegations of liability can only be read as common to all of them.  In summary, Plaintiff is complaining that CIGNA's UCR review and payments resulted in insufficient remuneration to it.  Although all of the claims started with individual beneficiaries, all have since been assigned to a single party -- Plaintiff.

Consequently, in this case a single plaintiff raises a series of claims, each of which depends on the same set of assertions by this medical services provider regarding the money it is owed under CIGNA's plans and its processing and payment protocols.  The various claims are thus amalgamated into a single case or controversy.  As a result, therefore, even if the Court were to find that Plaintiff's arguments against complete ERISA preemption had merit, the Court should retain jurisdiction and not remand this case because these arguments do not apply to a majority of the claims in this case, and the balance of the claims are properly pending here pursuant to this Court's supplemental jurisdiction.

Plaintiff makes the strange argument that the common law claims are "ancillary" and therefore should not impede remand even if they are completely preempted.  (Plaintiff's Brf. at 7 n.1.)  Of course, one of these common law claims appears as Count One of the Complaint. CIGNA does not concede that Plaintiff has or could plead a viable cause of action under a state

#1428003 v1
106782-66179

common law theory, but at least the common law theory pled by Plaintiff is recognized in law as sustaining a private cause of action, albeit one preempted by ERISA.  (See CIGNA's Motion to Dismiss.)  The other, statutory and regulatory claims Plaintiff raises in Counts Two and Three do not create a liability enforceable by Plaintiff at all.  Plaintiff, in its desire to return to state court, now apparently wishes it had not pled Counts One and Four.  That does not make the claims in these Counts "ancillary."  In fact, they are more plausible than those in the Counts Plaintiff now says are "the centerpiece of this litigation."  (Plaintiff's Brf. at 7.)

## IV.   EVEN IF THE COURT REMANDED THE ACTION, AN AWARD OF ATTORNEYS' FEES WOULD NOT BE APPROPRIATE

For the foregoing reasons, Defendants maintain that this action has been properly removed and Plaintiff's motion to remand should be denied.  Plaintiff contends, however, not only that this case should be remanded, but that an award of attorneys' fees and costs is "clearly justif[ied]."  (Plaintiff's Brf. at 12.)  But, even if Plaintiff were correct on the merits and the Court remanded this case, an award of attorneys' fees would be inappropriate and unwarranted.

Pursuant to the removal statute, the Court has discretion with respect to an award of attorneys' fees and costs.  Section 1447(c) "provides that a remand order 'may' require payment of attorney's fees--not 'shall' or 'should.'"  Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005).  Indeed, "[i]f fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove was obvious.  Id. at 140.  (citing to Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978), wherein the Court held that awarding fees simply because the party did not prevail "could discourage all but the most airtight claims, for seldom can a [party] be sure of ultimate success").  Simply, "there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases."  Martin, 546 U.S. at 140.  Here, however, it is obvious.  There is no

#1428003 v1
106782-66179

question as to Defendants' right to remove.  The matter is properly before this Court via ERISA jurisdiction.

In Martin, the High Court recognized that the decision to award attorneys' fees should not undermine "Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  Id.  Accordingly, the standard for awarding fees turns on the reasonableness of the removal.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Id. at 141.  See also Optec Displays, Inc. v. Am. Maint., Inc., 2008 U.S. Dist. LEXIS 47562 (D.N.J. June 18, 2008).  "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.  For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees."  Martin, 546 U.S. at 141.  Here, it should be noted that Defendants removed this matter on May 29,2009.  Plaintiff did not seek remand until July 20, 2009 – nearly 2 months after the matter had been removed and only after CIGNA filed a motion to dismiss.

Plaintiff maintains that it is entitled to attorneys' fees and costs because CIGNA not only "refused to consent to remand," but has done so despite a "remand Order directly on point." (Plaintiff's Brf. at 11).  Plaintiff's characterization of this consent order as a "remand order directly on point" is inaccurate.  Plaintiff refers to the consent remand order in North Jersey Brain and Spine Center v. HealthNet, Inc., Civil Action No. 08-04414-JAG-MAC.  The remand Order in the HealthNet case, however, was executed by consent.  There was no decision on the merits.  Obviously a consent order has no precedential effect, and neither CIGNA nor the Court are bound by it in any way.

31

It goes without saying that the Court need not reach a question as to attorneys' fees and costs.  As discussed in detail, _supra_, the matter has been properly removed.  If, however, the Court were to remand the case, an award of attorney's fees and costs would not be proper. Defendants' basis for removal and its analysis and interpretation of ERISA jurisdiction are certainly objectively reasonable.  Accordingly, Plaintiff's request for an award of attorney's fees and costs should be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to remand this matter to the Superior Court of New Jersey.

s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Allana L. Nason
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879
Attorneys for Defendants CIGNA Healthcare of New Jersey and CIGNA Corporation

Dated:  August 3, 2009

32