UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | : <br> : Civil Action No.: 09-cv-2630(JAG)(MCA) |
| Plaintiff, | : |
| vs. | : |
| CIGNA HEALTHCARE OF NEW JERSEY and CIGNA CORPORATION, | : |
| Defendants. | : |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO REMAND**

**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

Of Counsel:
    Eric D. Katz.

On the Brief:
    Eric D. Katz
    Jennifer D. Pawlak

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

REPLY LEGAL ARGUMENT ..................................................................................... 2

POINT I ......................................................................................................................... 2

    ERISA DOES NOT COMPLETELY PREEMPT
    PLAINTIFF'S STATE LAW STATUTORY AND REGULATORY CLAIMS ....... 2

POINT II ........................................................................................................................ 7

    NEW JERSEY STATE COURTS RECOGNIZE OR WOULD
    RECOGNIZE A PRIVATE RIGHT OF ACTION UNDER
    THE STATE STATUTORY AND REGULATORY CLAIMS PLED BY PLAINTIFF ......... 7

POINT III ..................................................................................................................... 10

    THE COURT SHOULD NOT EXERCISE
    SUPPLEMENTAL JURISIDICTION OVER THE
    NON-ERISA STATE STATUTORY AND REGULATORY CAUSES OF ACTION ......... 10

CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

Aetna Health Inc. v. Davila, 542 U.S. 200 (2004) .................................................................9

Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134 (3d Cir. 2004)..........................................5,9

Barnert Hosp. v. Horizon Healthcare Services, Inc., 2007 WL 1101443 (D.N.J. 2007) ................6

Bauman v. U.S. Healthcare, Inc., 1 F. Supp. 2d 420, (D.N.J. 1998)............................................12

Benefit Recovery, Inc. v. Donelon, 521 F.3d 326 n.6 (5th Cir. 2008) .........................................3

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) ................................................................12

Contemporary Services Corp. v. Universal City Studios, Inc., 655
  F. Supp. 885 (C.D. Cal. 1987).......................................................................................................11

DeAsencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003)................................................12,13

Doroshow v. Hartford Life and Acc. Ins. Co., 2009 WL 2257384 (3rd Cir., July 30, 2009) ........14

Englewood Hosp. and Med. Ctr. v. AFTRA Health Fund
2006 WL 3675261 (D.N.J., Dec. 12, 2006)......................................................................................6

Fink v. Dakotacare, 324 F.3d 685 (8th Cir. 2003).........................................................................9

IMFC Professional Services of Florida, Inc. v. Latin American
Home Health, Inc., 676 F.2d 152 (5th Cir. 1982)...........................................................................11

Kadetsky v. Egg Harbor Twp. Bd. of Ed., 164 F. Supp. 2d 425 (D.N.J 2001) ............................13

Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir.) .........................................9

Kentucky Assn' of Health Plans v. Miller, 538 U.S. 329 (2003)...................................................4

K.P. v. Corsey, 77 Fed. Appx. 611, 613 (3d Cir. 2003) ...............................................................11

Kurtek v. Capital Blue Cross, 219 F. App'x. 184 (3d Cir. 2007)..................................................9

Medical Society of New Jersey v. AmeriHealth HMO, Inc.,
376 N.J. Super. 48 (App. Div. 2005)................................................................................................7

Newark Beth Israel v. N.N.J. Teamsters Benefit Plan, 2006
WL 2830973 (D.N.J., Sept. 29, 2006)..............................................................................................6

Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337 (D.N.J. 2001).........................................10

Parks v. Pep Boys, 282 N.J. Super. 1 (App. Div. 1995) ...... 8

Pas v. Travelers Ins. Co., 7 F.3d 349 (3d Cir. 2003) ...... 11

Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan
388 F.3d 393 (3d. Cir. 2004) ...... 6

Prudential Ins. Co. of America v. Nat'l Park Medical Center, Inc.,
413 F.3d 897 (8th Cir. 2005) ...... 3,9

Pryzbowski v. Healthcare Inc., 245 F.3d 897 (8th Cir. 2005) ...... 9

Quality Infusion Care, Inc. v. Unicare Health Plans of Texas,
2007 WL 760368 (S.D. Tx., March 8, 2007) ...... 4

R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255 (2001) ...... 8

Shaffer v. Board of School Directors, 730 F.2d 910 (3d Cir. 1984) ...... 11

United Mine Workers of America v. Gibbs, 383 U.S. 715(1966) ...... 12

Westinghouse Credit Corp. v. Thompson, 987 F.2d 682 (10th Cir. 1993) ...... 11

**OTHER:**

28 U.S.C. 1367 ...... 11,12

39 N.J. Reg. 2455(a) ...... 8

ERISA § 502 ...... passim

ERISA § 514 ...... 2,3,4

N.J.A.C. 11:22-1.12 ...... 8

**PRELIMINARY STATEMENT**

CIGNA's opposition to the remand motion filed by plaintiff, North Jersey Brain and Spine Center ("NJBSC") unfortunately attempts to transform a truly straightforward state law matter into an ERISA hodgepodge. In an effort to accomplish this, CIGNA has filed a 32-page brief that may make for an informative treatise on boilerplate ERISA doctrine, but responds to very little of the relevant issues raised by plaintiff.

When parsed to remove the relevant from the extraneous, NJBSC quickly dispels of defendant's arguments. First, CIGNA offers no response to plaintiff's analysis explaining why the subject New Jersey insurance statutes and regulations are "saved" from ERISA complete preemption. Second, CIGNA offers no response to plaintiff's analysis explaining that these statutes and regulations constitute an "independent legal duty." Instead, defendant spends virtually its entire brief trumpeting the overused mantra that ERISA preemption swallows both heaven and earth. While it is true that plaintiff is limited to ERISA remedies for any disputed claims involving services provided to self-funded members -- assuming defendant can actually satisfy its removal burden and demonstrate that any of the disputed claims involve such plans[1] -- there is no question that this matter should be remanded as to all other disputed claims, involving fully insured plans, so that NJBSC may pursue its legitimate state law causes of action that do not implicate ERISA in any respect. Accordingly, plaintiff's motion for remand and fees should be granted.

---

[1] In fact, by definition, the prompt pay and emergency services reimbursement laws are only applicable to fully insured plans.

1

## REPLY LEGAL ARGUMENT

### POINT I

### ERISA DOES NOT COMPLETELY PREEMPT PLAINTIFF'S STATE LAW STATUTORY AND REGULATORY CLAIMS

CIGNA just refuses to acknowledge NJBSC's state statutory and regulatory causes of action even though defendant has been fully aware for almost a decade that it must process claims in accordance with the New Jersey prompt pay and emergency services reimbursement laws. In fact, CIGNA was harshly criticized by the New Jersey Department of Banking and Insurance ("DOBI") in 2002 for its poor prompt pay law performance. See DOBI Report of the Market Conduct Examination of CIGNA at 10-16 and 23-29, adopted May 10, 2002, attached to the Reply Certification of Eric D. Katz ("Katz Reply Cert.") as Exhibit "A." Nevertheless, from reading its brief, one would think that defendant is hearing for the first time that its claims processing is governed by a very well-developed body of insurance statutes and regulations that have nothing whatsoever to do with ERISA. It is simply unnecessary to rehash our moving arguments (see Moving Brief at Point II and Point III), that NJBSC's statutory and regulatory claims arise from an "independent legal duty" and that plaintiff has not brought these causes of action as an ERISA "participant" or "beneficiary" or based on any purported assignment of benefits.

CIGNA also has it backwards when it argues initially that this Court would never get to the § 514 "savings clause" because the preemption analysis ends once the Court "concludes" that plaintiff's state law claims are completely preempted under § 502. (Opposition Brief at 9-11). Apparently recognizing its error, defendant later concedes that the "savings clause [does] operate[] with respect to Section 502 as well . . . ." (Opposition Brief at 27 n.5). In any event,

as we explained in our opening memorandum and briefly reiterate below, NJBSC's state statutory and regulatory causes of action are <u>not</u> completely preempted under § 502 and these claims are "saved" from complete preemption pursuant to the "savings clause."

The proper sequence for the preemption analysis was clearly laid out in <u>Prudential Ins. Co. of America v. Nat'l Park Medical Center, Inc.</u>, 413 F.3d 897 (8th Cir. 2005), a case cited and relied upon by CIGNA. In <u>Prudential</u>, the Eighth Circuit first undertook a conflict preemption analysis under §514, including application of the "savings clause" and then the "deemer clause," and then turned to whether complete preemption under § 502 applied to the subject statute. <u>Id</u>. at 908-14. Applying the <u>Prudential</u> analysis to the statutes and regulations here, this Court should conclude that these causes of action are not completely preempted because they fall squarely within the ambit of the "savings clause." That is, both the New Jersey emergency services reimbursement regulations and the prompt pay laws are laws that are: 1) specifically directed toward entities engaged in insurance; and 2) substantially affect the risk pooling arrangement between the insurer and the insured. (Moving Brief at Point I).

Significantly, CIGNA completely avoids any substantive analysis of plaintiff's claims under the "savings clause" and erroneously puts all its eggs in one basket by arguing that the Court never gets there. (Opposition Brief at 10 ("The Court "need not reach [the savings clause] issue on this motion.")).$^{2}$ Consequently, plaintiff's "savings clause" analysis is unrebutted.

---

$^{2}$    CIGNA further incorrectly seeks to minimize the applicability of the § 514 "savings clause," labeling it a "narrow exception" to ERISA's "nearly absolute" § 502 preemption scheme. (Opposition Brief at 9). This same argument was summarily rejected in <u>Benefit Recovery, Inc. v. Donelon</u>, 521 F.3d 326, 331 n.6 (5th Cir. 2008), where the Fifth Circuit pragmatically observed that the "savings clause" is indeed "narrow" by application for the simple reason that the "clause speaks only to a narrow class of laws, namely those that 'regulate insurance' and not merely 'relate to' it." (citation omitted).

3

CIGNA then tries to buttress its upside down approach arguing that NJBSC's reliance on Kentucky Ass'n of Health Plans v. Miller, 538 U.S. 329 (2003) is "completely off-point" (Opposition Brief at 10) because the case was decided under § 514, not § 502.[3] However, this argument was considered and rejected in Quality Infusion Care, Inc. v. Unicare Health Plans of Texas, 2007 WL 760368 (S.D. Tx., March 8, 2007), where the district court logically explained that "the Miller court had no occasion to consider complete preemption under section 502 of ERISA because Miller was not an action brought by a participant or beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" Id. at *3.

This of course is precisely the situation in the case at bar. NJBSC's state statutory and regulatory causes of action are not completely preempted under § 502 because, as we addressed in our Moving Brief at Points II and III, these claims: 1) arise from CIGNA's independent statutory and regulatory duties to plaintiff under these legislative schemes; 2) NJBSC is neither an ERISA "participant" or "beneficiary"; and 3) plaintiff has not filed its statutory/regulatory causes of action under an assignment to recover benefits due under the terms of the fully insured plans.[4]

NJBSC sued CIGNA to get paid its **billed amounts** for the services rendered pursuant to the subject statutes and regulations. By definition, these insurance statutes and regulations only apply to fully insured plans (thus mooting any consideration of defendant's "deemer clause"

---

[3] As noted above, CIGNA does eventually do an about face and concedes that the "savings clause" analysis is equally applicable under § 514 and § 502, so plaintiff is unsure if CIGNA has now abandoned its Miller "off-point" argument.

[4] As we address in Point III, infra, to the extent that CIGNA can actually prove that some of the disputed claims involve services rendered to patients who are members of self-funded plans, NJBSC would not be able to pursue its state statutory and regulatory causes of action and would thus have to pursue ERISA remedies as to this group of claims only.

4

argument).  **Plaintiff's billed amounts as a matter of simple common sense have nothing to do with what a particular plan may or may not pay.**

As discussed in our Moving Brief at Point I(A) and (B), in asserting the statutory and regulatory causes of action, NJBSC is not "step[ing] into the beneficiary's shoes" nor is plaintiff seeking only what the patient "was entitled to under the Plan." Id.  Rather, pursuant to the HINT Act regulations, CIGNA's failure to timely respond to a claim for payment results in a waiver to contest the claim thereby requiring defendant to pay the amount billed by the physician.  Moreover, CIGNA is similarly obligated to pay the non-participating physician's full bill when he renders emergency services.  Thus, NJBSC's causes of action "create[] . . . obligation[s] on the part of [the insurer] to provide coverage outside of the Plan's limits." Id.  Plaintiff's damages are controlled by the provisions of the statutes and regulations and are not limited to what the "plan pays." Consequently, an "interpretation of the Plan is [not] an essential part" of the claim.  Id.  In other words, liability in this case does not "derive from the rights and obligations established by the Plan." Id.  Liability arises solely from the statutory duty owed by CIGNA to the provider, a duty that is completely independent of the plan.

CIGNA relies on Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134 (3d Cir. 2004) for the proposition that plaintiff's insurance law causes of action are not "saved" from preemption.  The reliance is misplaced.  In Barber, an employee brought suit against his insurer seeking punitive damages under a Pennsylvania bad faith insurance statute.  The Third Circuit found that the savings clause did not apply because the statute did not meet the second prong of the Miller test as it did not affect the risk pooling arrangement between the insurer and insured: "The bad faith statute here is remedial in nature - it is a remedy to which the insured may turn when injured by the bad faith of an insurer. . . . [The statute] does not affect the kinds of bargains

insurers and insureds may make. It provides that whatever the bargain struck, if the insurer acts in bad faith, the insured may recover punitive damages." Id. at 143.

In contrast, in the case at bar, there is no dispute that the New Jersey insurance laws directly impact the risk pooling arrangement between the insurer and the insured. NJBSC, a non-participating provider, is entitled to balance bill the patient if plaintiff is not paid what it billed. Therefore, if CIGNA does not accept the risk and pay the entire bill submitted by providers like NJBSC, the patient is responsible for the balance. This is completely different than the situation in Barber, where there was no transfer of the risk between the insurer and insured and the statute involved sought only to punish the carrier if it did not act in good faith.

Finally, CIGNA incorrectly suggests that because NJBSC may have accepted assignments from its patients that this somehow requires plaintiff to pursue ERISA remedies. The contention is false. Whether the patients assigned their rights to NJBSC is irrelevant "because the second requirement for removal is not met. That is, there is another legal duty, independent of ERISA, that supports the [plaintiff]'s claim." Newark Beth Israel v. N.N.J. Teamsters Benefit Plan, 2006 WL 2830973, *5 (D.N.J., Sept. 29, 2006). See Englewood Hosp. and Med. Ctr. v. AFTRA Health Fund, 2006 WL 3675261, *5 (D.N.J., Dec. 12, 2006) ("this Court agrees with Newark Beth Israel's interpretation of the Third Circuit's ruling in Pascack Valley, and finds that the existence of an assignment does not affect that analysis."); Barnert Hosp. v. Horizon Healthcare Services, Inc., 2007 WL 1101443, *11 (D.N.J. 2007) (holding "the existence of an assignment does not affect that analysis" where the plaintiff's claims arise from an independent legal duty.). Here, that independent legal duty is CIGNA's statutory and regulatory obligation to process claims timely and correctly under the provisions of the New Jersey insurance laws. NJBSC seeks to enforce its entitlement to correct payment pursuant to a

private right of action. NJBSC is entitled to pursue such a right in state court, unfettered by ERISA preemption.

## POINT II

## NEW JERSEY STATE COURTS RECOGNIZE OR WOULD RECOGNIZE A PRIVATE RIGHT OF ACTION UNDER THE STATE STATUTORY AND REGULATORY CLAIMS PLED BY PLAINTIFF

As an initial matter, whether there is an implied private right of action under the HINT Act and emergency services reimbursement regulations is irrelevant to the jurisdictional issue before the Court. If this Court concludes that NJBSC's statutory and regulatory causes of action are not completely preempted, then it should remand this case. Once back in the Superior Court, CIGNA can make any argument it chooses to support its position that no private rights of action exist under these state laws. That being said, we are nevertheless compelled to briefly respond to defendant's erroneous belief that NJBSC could not establish such private rights.

In Medical Society of New Jersey v. AmeriHealth HMO, Inc., 376 N.J. Super. 48 (App. Div. 2005), the Appellate Division concluded that physicians could enforce their rights under the HINT Act and expressly found that the prompt pay laws were specifically enacted to benefit physicians to allow them to recover money damages:

> The HINT Act may provide a private cause of action for doctors who file lawsuits to collect overdue payments from insurers, and who in that context seek to collect the statutory ten percent interest penalty mandated by the HINT Act. Allowing the HINT Act to be privately enforced by doctors suing for overdue payment would appear to further the purpose of the Act by permitting the doctors, for whose benefit the statute was enacted, to recover the interest on those payments. Id. at 59.

Two years earlier, in an important healthcare class action filed by this law firm on behalf of 60,000 New Jersey physicians (that ultimately resulted in a significant settlement), Hon. James S. Rothschild, J.S.C. also found that an implied private right of action exists under the

HINT Act that allows physicians to enforce their statutory right to prompt payment. See February 13, 2003 Letter Opinion of James S. Rothschild, J.S.C. in Sutter, M.D. v. Horizon Blue Cross Blue Shield, Docket No. ESX-L-3685-02, at 9-15, attached as Katz Reply Certif. Exhibit "B."

Similarly, with respect to the emergency services reimbursement regulations, it is clear that a private right of action exists under these regulations for the same reasons that a private right of action exists under the prompt pay laws. Employing the criteria set forth in R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255 (2001), we believe New Jersey courts would find that physicians such as NJBSC are important direct beneficiaries of these regulations. Indeed, the New Jersey Department of Banking and Insurance's ("DOBI's") Order A07-59 (Katz Reply Certif. as Exhibit "C") was specifically entered to assist physicians who were being deprived of compensation for the emergency services they rendered. Pursuant to paragraph 20, a carrier "must pay the non-participating provider a benefit large enough to insure that the non-participating provider does not balance bill . . . even if it means [paying] the provider's billed charges . . . ." (emphasis added). Second, there is strong evidence that the State Legislature intended there to be a private right of action for physicians because N.J.A.C. 11:22-1.12 provides a permissive, non-mandatory ADR mechanism to allow an individual provider to "resolve" emergency services payment disputes. See also 39 N.J. Reg. 2455(a). Finally, a civil remedy would certainly serve to "further the purpose of the statute." Parks v. Pep Boys, 282 N.J. Super. 1, 15 (App. Div. 1995). Here, that "purpose" is to ensure that patients are not saddled with astronomical bills because they required emergency services from non-participating physicians. In short, pursuant to regulation, non-participating surgeons, like NJBSC, are entitled to get paid what they bill -- irrespective of the coverage available to the patient under the plan.

8

In its opposition, CIGNA does not even attempt to undertake the <u>Gaydos</u> analysis that would be required under state law to determine whether private rights of action could be implied. Rather, defendant cites to a series of "private right of action" cases that it dubs "state minimum benefits laws" and "claims processing requirements" cases (Opposition Brief at 18-22) that are completely off point. First of all, the statutes and regulations at issue in this case have nothing to do with "minimum benefits laws." Moreover, all but one of CIGNA's cases involves suits by a <u>beneficiary or plan participant</u> -- not the physician -- arising from <u>the patient's inability to obtain medical treatment</u> or cost-effective treatment. See <u>Barber</u>, 383 F.3d 134; <u>Fink v. Dakotacare</u>, 324 F.3d 685 (8th Cir. 2003); <u>Kanne v. Connecticut General Life Ins. Co.</u>, 867 F.2d 489 (9th Cir.); <u>Pryzbowski v. US Healthcare, Inc.</u>, 245 F.3d 897 (8th Cir. 2005); <u>Kurtek v. Capital Blue Cross</u>, 219 F. App'x. 184 (3d Cir. 2007); <u>Aenta Health, Inc. v. Davila</u>, 542 U.S. 200 (2004).

In the case at bar, however, for each disputed claim at issue, the treatment was already rendered, and this matter is now simply one where the medical practice expects to be paid what it billed pursuant to the statutes and regulations of the State of New Jersey.

The only other case cited by CIGNA, <u>Prudential</u>, 413 F.3d 897, is also inapposite as it analyzed whether an Arkansas statute which required insurers to admit all willing qualified providers into their networks was preempted by ERISA. The <u>Prudential</u> court found that while the statute was saved from ERISA preemption, its civil penalties provision was preempted "with respect to any cause of action that could have been brought under ERISA." <u>Id</u>. at 914. Here, of course, as explained throughout this brief, NJBSC's statutory/regulatory causes of action seeking full payment of plaintiff's billed amounts could not be brought under ERISA and do not duplicate ERISA remedies in any way. In sum, CIGNA's opposition has no merit and plaintiff's remand motion should be granted.

9

## POINT III

### THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISIDICTION OVER THE NON-ERISA STATE STATUTORY AND REGULATORY CAUSES OF ACTION

CIGNA argues, without any proof other than a conclusory Declaration from June Ann Hendrik, that 15 of the 28 patients, whose claims are at issue, were members of self-funded plans while the remaining 13 belonged to fully insured plans. Thus, defendant contends, even if this Court were to find that NJBSC may pursue its state law statutory and regulatory causes of action pertaining to the claims submitted by the 13 fully insured patients, the Court should nevertheless deny remand and exercise its discretion to assert supplemental jurisdiction over these non-ERISA claims.

CIGNA, however, provides no evidence that _any_ of the disputed claims involve self-funded plans, let alone 15 such plans. Defendant did not produce any documents supporting its position or even identify who these 15 members allegedly are. On this ground alone, CIGNA's bald assertion should be rejected. The burden, of course, is on CIGNA as the removing party to establish the existence of federal subject matter jurisdiction. Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 341 (D.N.J. 2001) ("[a] removing party bears the burden of establishing that federal jurisdiction exists . . ."). Consequently, plaintiff submits that at a minimum, this Court should remand at least those claims for which CIGNA concedes involve fully insured plans and allow NJBSC to conduct jurisdictional discovery as to the remaining alleged 15 self-funded plan members. Respectfully, what this Court should not do is exercise supplemental jurisdiction over the non-ERISA statutory and regulatory causes of action that control almost half and perhaps more of the disputed claims in the case.

It was long ago settled that a federal court may remand supplemental state law claims while retaining jurisdiction over the federal law claims. IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc., 676 F.2d 152, 160 (5th Cir. 1982) ("If a case is removed as one within pendent jurisdiction, the discretionary element that inheres in that doctrine allows remand of nonfederal issues."). See, e.g., Westinghouse Credit Corp. v. Thompson, 987 F.2d 682, 685 (10th Cir. 1993) (upholding remand of supplemental state law claims and retention of jurisdiction over federal law claims); Contemporary Services Corp. v. Universal City Studios, Inc., 655 F. Supp. 885, 895 (C.D. Cal. 1987) (remanding supplemental state law claims and retaining federal law claims). Indeed, where the state law claims involve the interpretation of novel and complex statutory and regulatory schemes such as those at issue in this case,[5] the Third Circuit has consistently ruled that district courts should decline to exercise supplemental jurisdiction over such state law claims. See 28 U.S.C. § 1367(c)(1); K.P. v. Corsey, 77 Fed. App'x. 611, 613 (3d Cir. 2003) (remanding state law claims because "how the N.J.L.A.D. applies to the facts in this case is a novel and complex issue of state law"); Pas v. Travelers Ins. Co., 7 F.3d 349 (3d Cir. 1993) (upholding remand of New Jersey statutory claims not preempted by ERISA); Shaffer v. Board of School Directors, 730 F.2d 910, 913 (3d Cir. 1984) ("In this case, where the underlying issue of state law is of first impression with important implications . . . , factors weighing in favor of state court adjudication certainly predominate.").

Thus, assuming CIGNA could even demonstrate that at least some of the disputed claims involve self-funded plans, it is respectfully requested that this Court remand all claims involving fully insured plans (that are clearly not subject to ERISA complete preemption for the reasons

---

[5] See discussion of private rights of action under the subject state law statutes and regulations, Point II supra.

addressed supra) and only exercise subject matter jurisdiction over the remaining self-funded claims.[6]

Although, as defendant observes, NJBSC filed a single complaint that included all disputed claims, that does not mean that supplemental jurisdiction under 28 U.S.C. § 1367 is appropriate. The exercise of such jurisdiction is totally discretionary. See DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) ("'It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.'") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). In the case at bar, we believe that the Court should, in exercising its discretion, decline to assert supplemental jurisdiction because it would not be in the interest of justice to do so. As we discussed above, this case involves novel and complex healthcare statutes and regulations that are better left to the Superior Court to interpret. In addition, there would likely be potential confusion as a jury would be called upon to decide liability and damages as to the state law causes of action as to certain claims while hearing unique evidence pertaining to the ERISA enforcement and breach of fiduciary duty causes of action as to the other claims -- assuming CIGNA could ever establish that any of the remaining disputed claims involve self-funded plans. As this District has recognized:

> If the court finds that it possesses the power to hear the pendant claim(s), then it still possesses the discretion to dismiss plaintiff's

---

[6] We reiterate, the First Count (unjust enrichment) and Fourth Count (misrepresentation) contain ancillary causes of action that, even if completely preempted, should not impact the Court's remand analysis as to the statutory claims. See Bauman v. U.S. Healthcare, Inc., 1 F. Supp. 2d 420, 425-26 (D.N.J. 1998), aff'd in part, rev'd in part on other grounds, In re U.S. Healthcare, Inc., 193 F.3d 151 (3d Cir. 1999) (remanding to state court where the preempted cause of action "was a relatively minor claim and only one of several claims the Plaintiffs asserted"). See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988) (cited to and relied on by Bauman). **In short, therefore, this Court could certainly conclude that the common law claims of unjust enrichment and misrepresentation are completely preempted and still remand the state statutory and regulatory causes of action contained in the Second Count and Third Count of the complaint.**

12

> state law claims if it finds that . . . "economy, convenience and fairness to the litigants" caution against supplemental jurisdiction [internal citation omitted] or if inclusion of state law claims could unduly complicate the case or confuse a jury. Kadetsky v. Egg Harbor Twp. Bd. of Ed., 164 F. Supp. 2d 425, 436 (D.N.J. 2001).

Here, different standards of review would apply to the non-ERISA claims (i.e., arising under the HINT Act and emergency services reimbursement regulations) and the ERISA claims, requiring different testimony and proofs. See DeAsencio, 342 F.3d at 308-9 (where plaintiff alleged both federal Fair Labor Standards Act and Pennsylvania Wage Payment and Collection Law claims, district court abused its discretion in finding supplemental jurisdiction over state law claim because, inter alia, "the terms of proof and scope of the issues" in the state law claim "may substantially predominate over the more straightforward federal scheme").

In this case, liability and damages under the state statutes and regulations at issue arise from CIGNA's failure to satisfy the requirements of these laws and these matters would be decided by a jury and not the Court. For example, to determine prompt pay compliance under the HINT Act, plaintiff would proffer the following evidence to the jury as to each of the fully insured claims at issue: (1) the date the claim was received by CIGNA (the "start" time on the prompt pay clock); and (2) the date when CIGNA responded to the claim (the "end" time on the prompt pay clock) by (i) paying the claim via placing the check in the mail; (ii) denying the claim via placing the denial in the mail; or (iii) disputing the claim, via "expeditiously" notifying the provider and including all the reasons why the claim is being disputed and requesting any additional information necessary for the carrier to process the claim. We would also prove to the jury that for most if not all of the disputed claims, CIGNA did not respond expeditiously and with specificity as is required by the law and therefore waived its right to contest payment and thus should pay NJBSC's billed amount. The same type of evidence would be presented to the

13

jury as to those claims that are subject to the emergency services reimbursement regulations, along with additional evidence that the services were emergency in nature. As with the prompt pay law claims, NJBSC's damages would be the amount it billed, which has no relationship whatsoever to any of CIGNA's plans or what CIGNA may ordinarily cover under those plans. Moreover, the burden of proof would be a simple preponderance of the evidence.

On the other hand, for those claims that truly involve self-funded plans and therefore would necessitate the filing of an amended complaint in this Court, the ERISA burden of proof, evidentiary requirements and the benefits (i.e., dollars) plaintiff would be entitled to are very different. Regarding the denial of benefits claim (ERISA enforcement action) plaintiff would present testimony and evidence as to conflicts of interest between the self-funded plans, their trustees and the members. Although it is the Court that would determine, by either a de novo review or by an arbitrary and capricious standard, whether there was an appropriate denial of benefits, see Doroshow v. Hartford Life and Acc. Ins. Co., 2009 WL 2257384, *3 (3d Cir., July 30, 2009), all of this testimony and evidence would be heard by the jury even though it has nothing whatsoever to do with CIGNA's liability and damages under the state statutes and regulations.

The same would be true as to plaintiff's ERISA breach of fiduciary claim. The jury would have to hear about the due diligence, if any, undertaken by the plan fiduciaries, what the fiduciaries knew about the claims and what the trustees communicated to beneficiaries, when and why. The opportunity for jury confusion would therefore be pervasive. The jury would have the difficult task of trying to sift through the evidence to determine what is relevant to which causes of action. Moreover, the jury would be asked to disregard certain portions of the testimony and proofs that are presented which is likely to result in further confusion. In sum,

14

therefore, the Court should decline to exercise supplemental jurisdiction over the non-ERISA causes of action and should remand that portion of the case to the Superior Court.

## CONCLUSION

For the foregoing reasons, as well as those set forth in plaintiff's moving papers, we respectfully request that North Jersey Brain & Spine Center's motion for remand and fees be granted.

                                                MAZIE SLATER KATZ & FREEMAN, LLC
                                                Attorneys for Plaintiff

                                                BY: _____
                                                       ERIC D. KATZ

DATED: August 10, 2009

H:\EDK\Comp Neuro\CIGNA III\REMAND PAPERS\Plaintiff's Reply Brf in supp of remand 8-5-09.doc

15