**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>ROOM 2060<br>NEWARK, NJ 07101<br>973-297-4903 |

January 11, 2009

Eric Katz, Esq.
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068

E. Evans Wohlforth, Jr., Esq.
Gibbons, P.C.
One Gateway Center
Newark, New Jersey 07102-5310

**REPORT & RECOMMENDATION**

**Re:   North Jersey Brain & Spine Center v. CIGNA Healthcare of NJ, Inc., et al.
            Civil Action No. 09-2630 (JAG)**

Dear Counsel:

Before this Court is the motion for remand and for costs and fees, (docket entry no. 9), of Plaintiff North Jersey Brain & Spine Center ("Plaintiff"). Defendants CIGNA Healthcare of New Jersey, Inc., and CIGNA Corporation (collectively "CIGNA") oppose the motion. Judge Greenaway referred the motion to me for Report and Recommendation.

This Court held oral argument on November 18, 2009, and the Court reserved ruling from the bench. This written opinion supplements the transcript of the November 18, 2009, hearing, pursuant to LOCAL CIVIL RULE 52.1. Having considered the parties' submissions, for good cause shown, and for the reasons set forth on the record and herein, this Court recommends that the motion to remand be **DENIED**.

**I.    BACKGROUND**

Plaintiff is a neurosurgical medical practice, which provides medical services to individuals who are covered under healthcare insurance plans operated, controlled and/or administered by CIGNA. (Compl., ¶ 1 at 1-2). As an out-of-network provider, Plaintiff has no contractual agreement

with CIGNA for payment of services. Instead, Plaintiff alleges that, pursuant to certain New Jersey regulations and statutes, CIGNA was obligated to pay Plaintiff 100% of its billed usual, customary, and reasonable ("UCR") fees for services rendered for each identified patient, less the patient's co-pay, co-insurance or deductible if any.[1] (Compl., ¶ 2 at 2). Plaintiff further alleges that the applicable New Jersey statutes and regulations require CIGNA to make payment to Plaintiff within 40 calendar days of receipt of Plaintiff's bills. (Id.) Yet, CIGNA has not paid for the medical services performed and/or has underpaid the claims. (Id. at ¶¶ 2, 5).

On April 13, 2009, Plaintiff filed the instant action in the Superior Court of New Jersey. Plaintiff asserts claims for (1) unjust enrichment (count one); (2) violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by non-participating providers, N.J.A.C. 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d), ("emergency services reimbursement regulations") (count two); (3) violations of New Jersey's Healthcare Information Networks and Technologies ("HINT") Act ("prompt pay laws")[2] and the Health Claims Authorization, Processing and Payment Act ("HCAPPA"),[3] N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2, 26:2J-8.1, (count three); and (4) misrepresentation (count four). Plaintiff asserts that none of the state law claims arise under the civil enforcement provision of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132(a)(1)(B); from an assignment of benefits; or under any purported federal common law or doctrine (Compl., ¶ 7).

On May 29, 2009, CIGNA removed the matter to federal court. CIGNA argues that Plaintiff's claims challenge the denial of benefits under the health benefits plans governed by ERISA, and thus are preempted based on federal question jurisdiction, pursuant to 28 U.S.C. § 1331. On July 20, 2009, Plaintiff filed the instant motion for remand.

## II.  LEGAL STANDARD FOR REMOVAL

As a preliminary matter, a district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. A claim brought in state court may be removed to federal court under 28 U.S.C. § 1441. A party may seek

---

[1] According to Plaintiff, the UCR fee is defined as the amount that out-of-network providers routinely charge to their patients in the free market, i.e., "without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the insurance company's or CIGNA's subscribers." (Compl., at ¶ 4).

[2] The HINT Act establishes specific timetables by when payment must be remitted to healthcare providers for "eligible" non-capitated claims for medical services. (Compl., Count Three at ¶ 2).

[3] HCAPPA amended specific provisions of HINT Act concerning the timetable for payment and processing of electronic medical claims. (Compl., Count Three at ¶ 2).

to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447©. A party opposing remand must show that removal was proper. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991).

Typically, the pleading determines whether a complaint is subject to federal law. The Supreme Court has stated: "It is long settled law that a cause of action arises under federal law only when plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63 (1987). The fact that a plaintiff's state law claims may be preempted by federal law is insufficient to confer federal question jurisdiction. Dawson v. Ciba-Geigy Corp., 145 F. Supp. 2d 565, 568 (D.N.J. 2001).

However, "in certain circumstances the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the 'well-pleaded complaint' rule." Id. Thus, the doctrine of complete preemption permits removal of an action to federal court when: (1) a federal statute wholly displaces a state law cause of action and creates a superseding cause of action, and (2) there is a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Railroad Labor Executives Ass'n v. Pittsburg & Lake Erie R.R., 858 F. 2d 936, 942 (3d Cir. 1988). Where complete preemption exists, removal is proper although there is no federal cause of action on the face of the complaint. Rivet v. Regions Bank of L.A., 522 U.S. 470, 475 (1998). Where the "preemptive force " of federal law "is so powerful as to displace entirely any state cause of action" for the same claim, the state claim "necessarily 'arises under' federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983). Because the Supreme Court has only invoked the complete preemption doctrine in "extraordinary" cases, this Court must narrowly construe it. Englewood Hospital and Medical Center v. Aftra Health Fund, 2006 WL 3675261, * 3 (D.N.J. Dec. 12, 2006) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)).

Recognizing the narrow scope of the doctrine, the Third Circuit examined complete preemption in the context of ERISA. See, e.g., Pascack Valley Hospital v. LOCAL 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004). In Pascack, the Third Circuit established a two-prong test for determining whether ERISA completely preempts a state court claim, and thus the action is removable. Id. at 396. The Third Circuit explained there that a case is removable only if "(1) the [plaintiff] Hospital could have brought its breach of contract claim under § 502(a) [of ERISA], and (2) no other legal duty supports the [plaintiff] Hospital's claim. Id. at 400.

### III.   ANALYSIS

In support of remand, Plaintiff advances three arguments: (1) no federal question is presented on the face of Plaintiff's well-pleaded complaint; (2) the state law claims do not arise under ERISA, or from an assignment of benefits, or under any purported federal common law or doctrine; and (3) CIGNA has a legal duty to promptly and fully pay Plaintiff for services rendered pursuant to New Jersey's prompt pay laws and emergency services reimbursement regulations.

There is no dispute that a federal question is not presented on the face of the complaint. A plain reading of the complaint makes clear that Plaintiff seeks relief under New Jersey statutory, regulatory and common law. Plaintiff does not seek relief under ERISA or any other federal statute or the constitution. The thrust of CIGNA's opposition to remand is that § 502(a) of ERISA, 28 U.S.C. § 1132(a) – the civil enforcement mechanism – provides exclusive remedies regarding the denial of payment or underpayment of benefits under ERISA governed health benefit plans. Accordingly, CIGNA argues because Plaintiff has standing to bring a claim under section 502(a) and no separate legal duty exists to support Plaintiff's claims, all of Plaintiff's claims are preempted.

### A. Plaintiff's Standing to Sue Under § 502(a)

With respect to the first prong of the Pascack test, a health care provider, which is neither a beneficiary nor a participant, does not has standing under ERISA to bring a claim in its own right.[4] Pascack Valley, 388 F.3d at 400. See Newark Beth Israel v. Northern New Jersey Teamsters Benefit Plan, 2006 WL 2830973, at * 4 (D.N.J. Sept. 29, 2006). Yet, in Pascack Valley, the Third Circuit noted that "[a]lmost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." Id. at 401 n.7. Indeed, judges within this district have so held. See,e.g., Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of NJ, 2009 WL 3233427 at *5 (D.N.J. Sept. 30, 2009); Wayne Surgical Ctr. v. Concentra Preferred Systems, Inc., 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007).

Here, at oral argument, Plaintiff conceded the existence of a valid assignment of claims from the patient plan participants. Accordingly, Plaintiff has standing to bring a claim under section 502(a) of ERISA, and thus, the first prong of the Pascack complete preemption test has been met.

### B. Existence of a Legal Duty Independent of ERISA

With respect to the second prong of the Pascack test, the Court must determine whether a legal duty, independent of ERISA, supports Plaintiff's claims. As detailed below, the Court finds that no such independent legal duty exists, and thus, the second requirement has been met.

First, it is undisputed that the District Court has jurisdiction over Plaintiff's unjust enrichment and misrepresentation claims because, for purposes of the remand motion, Plaintiff acknowledged that such legal claims are completely preempted under ERISA. Accordingly, as Plaintiff could have brought its common law claims under section 502(a), such claims do not create a legal duty independent of ERISA. See Aetna Health Inc. v. Davila, 542 U.S. 213-14 (2004).

---

[4] Section 502(a) provides that "a participant or beneficiary" of an "employee welfare benefit plan" may bring a civil action "to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Instead, Plaintiff urges the District Court to remand the state statutory and regulatory claims concerning the fully insured plans, arguing that they are not subject to ERISA's complete preemption.[5]

As such, the Court is faced with two narrow issues: (1) whether Plaintiff's claims based on New Jersey's prompt pay laws and emergency services reimbursement regulations involving fully insured plans provide a legal duty independent of ERISA, and thus are not completely preempted; and (2) if such statutory claims are not preempted, whether the District Court should exercise supplemental jurisdiction over them, pursuant to 28 U.S.C. § 1367(a).

### 1.      Complete Preemption Over Fully Insured Plan Based Claims

Plaintiff contends that, under New Jersey's prompt pay laws and emergency services reimbursement regulations, it can proceed with its legal claims for unpaid and underpaid medical provider bills under the fully insured plans. Plaintiff reasons that CIGNA, as the insurance carrier, has a statutory duty to timely communicate with Plaintiff about payment on a medical claim. Additionally, CIGNA's failure to timely contest the medical claims waives its right to challenge Plaintiff's entitlement to payment and subjects CIGNA to late payment with statutory interest. Thus, according to Plaintiff, the ERISA health plans are not implicated because CIGNA has waived its right to contest Plaintiff's claims of payment under New Jersey's prompt pay laws. Similarly, Plaintiff argues that under the emergency services reimbursement regulations, an insurance carrier must pay a provider for emergency services rendered. CIGNA's failure to so pay Plaintiff subjects CIGNA to a fine. Thus, according to Plaintiff, these state statutes and regulations create a legal duty to support Plaintiff's state law claims independent of ERISA.

Under the second prong of the Pascack test, this Court must examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an "essential part" of Plaintiff's claims. See Pascack Valley, 388 F.3d at 402. In finding a separate legal duty, the Third Circuit in Pascack reasoned that:

---

[5] Plaintiff does not dispute that, to the extent some of the state statutory and regulatory claims involve self-funded employee health plans, those claims are preempted under ERISA. Accordingly, Plaintiff concedes that the District Court has jurisdiction over those state law claims.

In that regard, according to CIGNA, there are 28 patient/plan participants and/or beneficiaries who Plaintiff claims to have treated and for whom CIGNA improperly reduced or denied payment. Of the 28 patients, 15 were participants and/or beneficiaries of self-insured plans, under which the benefits were funded directly by the participants' employers. As to these plans, CIGNA provided claims administration services only. With respect to the remaining 13 patient plans, CIGNA acknowledges that it issued insurance policies that underwrote the plans' benefits obligations to the various employees, and thus, were fully insured plans. For purposes of the remand motion, Plaintiff accepts CIGNA's representations on their face.

> The Hospital's claims, to be sure, are derived from an ERISA plan, and exist 'only because of that plan. The crux of the parties' dispute is the meaning of . . . the Subscriber Agreement, which governs payment for 'Covered Services furnished to Eligible Persons.' Were coverage and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the Hospital's claims. Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself.

Pascack Valley, 388 F.3d at 402 (internal citations omitted).

Here, unlike the plaintiff hospital's claims in Pascack, Plaintiff's right to recovery, if it exists, does not depend on the operation of a contract separate from the fully insured plans at issue. Rather, Plaintiff's statutory and regulatory state law claims arise from a dispute over Plaintiff's right to reimbursement for services rendered based on its patients' assignment of benefits from their ERISA health benefit plans. Because no separate contract governs Plaintiff's right to payment, Plaintiff's claims are inextricably intertwined with the interpretation and application of the ERISA plans. See Wayne Surgical Center, 2007 WL 2416428, at *5; Ala. Dental Assoc. v. Blue Cross & Blue Shield of Ala., Inc., 2007 WL 25488, at *5 (M.D. Ala. Jan. 3, 2007). As such, this case is easily distinguishable from Pascack and other cases, wherein the resolution of the parties' dispute depended entirely on the operation of separate contracts, not the ERISA plan itself. See, e.g., Pascack Valley, 388 F.3d at 402; Barnert Hospital v. Horizon Healthcare Services, 2007 WL 1101443, at *11 (D.N.J. Apr. 11, 2007); Englewood Hospital and Medical Center, 2006 WL 3675261 at *5. Accordingly, here, no independent legal duty exists concerning Plaintiff's New Jersey statutory and regulatory claims involving the fully insured plans.

Plaintiff contends that, although there is no separate contract governing the parties' dispute over payment, New Jersey's prompt pay laws and emergency services reimbursement regulations provide an independent legal duty under the Pascack test. Even if CIGNA has independent obligations under the state's prompt pay laws and emergency services reimbursement regulations, the Court nevertheless finds that such claims involving fully insured plans cannot be resolved without reference, as detailed above, to the benefit plans governed by ERISA. See, e.g., Wayne Surgical Center, 2007 WL 2416428, at * 6 (concluding that state law claims for unjust enrichment, tortious interference, and violation of New Jersey Fraud Act cannot be resolved with reference to ERISA benefit plans); Thomas v. Aetna Inc., 1999 WL 1425366, at *9 (D.N.J. Jun. 8, 1999) (reaching same conclusion as to fraudulent inducement claim).

As CIGNA has demonstrated that both prongs of the Pascack test are met here, I find that Plaintiff's second and third causes of action involving the fully insured plans are completely preempted by ERISA's civil enforcement provision, and thus, removal was proper. Consequently,

the Court respectfully recommends that Plaintiff's motion for remand be denied.

### 2.   Supplemental Jurisdiction Over Fully Insured Plan Based Claims

Even if this Court did not find ERISA preempts the remaining statutory and regulatory claims, under section 1367, the District Court could exercise supplemental jurisdiction over such claims if they were part of the same "case or controversy" as the preempted ERISA claims.

Section 1367(a) provides for jurisdiction "in any civil action of which the district courts have original jurisdiction" over all other claims that are so related ... that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). "[A] district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir.2003) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)); see 28 U.S.C. § 1367(a). A "mere tangential overlap of facts," however, is insufficient to confer supplemental jurisdiction. Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 105 (3d Cir.1988).

Here, it is undisputed that the gravamen of Plaintiff's complaint is CIGNA's arbitrary failure to make proper payment, pursuant to the UCR's, for medical services rendered by Plaintiff. As such, the New Jersey statutory and regulatory and fully insured plan claims share a common nucleus of facts with the common law and self-funded plan claims preempted by ERISA. Exercising supplemental jurisdiction will promote efficiency by avoiding duplicative discovery and presentation of evidence at separate trials, arising out of the same transaction. Furthermore, with respect to all of Plaintiff's legal claims, they seek the same remedies. Given the 'common nucleus of operative facts,' the Court respectfully recommends that the District Court exercise supplemental jurisdiction over the state statutory and regulatory and fully insured plan based claims.

### C.   ERISA's Saving Clause Under Section 514

Alternatively, Plaintiff contends that, under ERISA's "saving clause," its statutory and regulatory claims are "saved" from complete preemption. Thus, Plaintiff may proceed as to these remaining claims. This Court disagrees.

At the outset, it is important to distinguish between complete preemption under section 502(a), as detailed above, and express preemption (or conflict preemption) under section 514(a). Complete preemption under section 502(a) is a jurisdictional concept. Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 270 (3d Cir. 2001). Under the doctrine of express preemption, a state law may be preempted "to the extent that it actually conflicts with federal law." Barber v. Unum Life Ins. Co. of America, 383 F.3d 134, 138 (3d Cir. 2004) (internal citation omitted). CIGNA contends express preemption applies because the prompt pay laws and emergency services reimbursement regulations are separate enforcement schemes that alter, enlarge, and/or supplement the remedies otherwise available under section 502(a)'s civil enforcement mechanism.

In the context of express preemption under ERISA, section 514(a), "the express preemption clause, broadly provides that '[e]xcept as provided in subsection (b) of this section, the provisions of this title . . . shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" Barber, 383 F.3d at 137 (quoting 29 U.S.C. § 1144(a)). Congress, however, carved out an exception to express preemption under 514(a) by drafting the saving clause.

The saving clause, section 514(b)(2)(A), provides: "nothing in [ERISA's preemption provisions] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Yet, if the deemer clause, which is a limitation on the saving clause, applies, there is preemption. The deemer clause provides: "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B). In other words, under the deemer clause, a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987) (quoting § 514(b)(2)(B)). As such, the deemer clause exempts a self-funded ERISA plan from state laws regulating insurance within the saving clause. See FMC Corp. v. Holliday, 498 U.S. 52, 61-64 (1990).

With respect to the application of the saving clause here, the Supreme Court's holding in Aetna Health, 542 U.S. 200 is instructive. The Supreme Court held that the presence of the saving clause does not affect the regular conflict preemption (i.e., express preemption) analysis:

> ERISA §514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a). Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

Aetna Health, 542 U.S. at 217-18. In so holding, the "Court noted Congress' policy choices reflected in ERISA's exclusive remedial provision would be undermined by state laws allowing alternate remedies. . ." Barber, 383 F.3d at 141.

Recently, in Barber, 383 F.3d at 134, the Third Circuit considered the plaintiff employee's argument that Pennsylvania's bad faith statute for insurance claims was saved under the saving clause. Applying the preemption analysis in Aetna Health, the Third Circuit held that "even if the Pennsylvania bad faith statute for insurance claims "were found to 'regulate insurance' under the saving clause, it would still be preempted because the punitive damages remedy supplements ERISA's exclusive remedial scheme." Barber, 383 F.3d at 141.

Applying the Third Circuit's analysis in Barber here, this Court finds that even if New Jersey's prompt pay laws and the emergency services reimbursement regulations were deemed to "regulate insurance" under the saving clause, Plaintiff's claims under these state laws and regulations would still be preempted. Specifically, New Jersey's prompt pay laws and emergency services reimbursement regulations, which provide for statutory interest and the imposition of fines, supplement ERISA's exclusive remedial scheme. See Barber, 383 F.3d at 140; DeVito v. Aetna, Inc., 536 F. Supp.2d 523, 531 (D.N.J. 2008). Indeed, these state laws and regulations "provide[] a separate vehicle to assert a claim for benefits . . . in addition to[] ERISA's remedial scheme." Aetna Health, 542 U.S. at 217-18. The Court reaches this result even if these state laws and regulations provide a private cause of action for improperly reduced or denied payments. See Barber, 383 F.3d at 140. Accordingly, the Court concludes that based on the analyses in Aetna Health and Barber, ERISA's "saving clause" does not preclude preemption of Plaintiff's claims under prompt pay laws and the emergency services reimbursement regulations.[6]

### D. Plaintiff's Request for Costs and Fees Under 28 U.S.C. § 1447©

Plaintiff contends that fees and costs incurred with filing the remand motion should be assessed against CIGNA. Since this Court recommends that Plaintiff's motion for remand be denied, the Court likewise recommends that Plaintiff's application for costs and fees be denied.

### IV. CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the motion for remand and for costs and fees be **DENIED**.

                *s/Madeline Cox Arleo*
                **MADELINE COX ARLEO**
                **United States Magistrate Judge**

cc:     Clerk
        Hon. Joseph A. Greenaway, Jr., U.S.D.J.
        All Parties
        File

---

[6] Given this Court's finding that Plaintiff's causes of action under New Jersey's prompt pay laws and emergency services reimbursement regulations are preempted, this Court declines to reach the issue of whether these state laws and regulations "regulate insurance" under the saving clause.