# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

NORTH JERSEY BRAIN & SPINE CENTER,

Plaintiff,

vs.

CIGNA HEALTHCARE OF NEW JERSEY
and CIGNA CORPORATION,

Defendants.

Civil Action No.: 09-cv-02630 (JAG)(MCA)

*Document Electronically Filed*

---

## DEFENDANTS CIGNA HEALTHCARE OF NEW JERSEY, INC.'S AND CIGNA CORPORATION'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

E. Evans Wohlforth, Jr.
Jennifer Marino Thibodaux
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
Attorneys for Defendants CIGNA Healthcare
of New Jersey, Inc. and CIGNA Corporation

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

PROCEDURAL HISTORY ON THE MOTION .................................................. 1

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 3

I.   THE MOTION TO DISMISS STANDARD .......................................... 3

    A.   Rule 12(b)(6) Requires Dismissal of Claims That are Invalid as a Matter of Law ................................................................. 3

II.   ERISA PREEMPTION ........................................................................... 5

    A.   The ERISA Preemption Provisions ........................................... 5

    B.   ERISA Preempts Remedies Not Consistent With Its Remedial Scheme ....................................................................... 8

III.   EACH OF PLAINTIFF'S INDIVIDUAL CLAIMS IS PREEMPTED BY ERISA AND MUST BE DISMISSED ................................................. 10

    A.   Counts One and Four - Unjust Enrichment and Misrepresentation ......... 10

    B.   Counts Two and Three - Violations of New Jersey Regulations Governing Payment for Emergency Services and Violations of the New Jersey Healthcare Information Networks and Technologies and Health Claims Authorization, Processing, and Payment Acts .......... 12

IV.   THE NEW JERSEY STATUTORY AND REGULATORY SCHEMES ASSERTED BY PLAINTIFF DO NOT PROVIDE PRIVATE RIGHTS OF ACTION. ......................................................................................... 16

    A.   There Is No Private Right of Action Under the HINT Act and Subsequently the HCAPPA ..................................................... 16

    B.   There Is No Private Right of Action Under the Enumerated State Regulations ........................................................................ 17

V.   CIGNA WITHDRAWS ITS ARGUMENT THAT PLAINTIFF NJBSC HAS FAILED TO PLEAD STANDING TO PURSUE ERISA CLAIMS ........ 22

VI.   PLAINTIFF'S COMPLAINT FAILS TO ASSERT COGNIZABLE CLAIMS ................................................................................................ 22

    A.   Count One - Unjust Enrichment ............................................... 22

    B.   Count Two - Violations of New Jersey Regulations Governing Payment for Emergency Services ............................................. 23

    C.   Count Four - Misrepresentation ................................................ 24

CONCLUSION .................................................................................................. 26

#1500685 v1
106782-66179

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

Aetna Health, Inc. v. Davila,
    542 U.S. 200 (2004).................................................................... passim

Ashcroft v. Iqbal,
    2009 U.S. LEXIS 3472 (May 18, 2009) .................................... 4

Barber v. UNUM Life Ins. Co. of Am.,
    383 F.3d 134 (3d Cir. 2004) ............................................ 7, 13, 14

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007)................................................ 3, 4, 23, 24

Cannon v. Group Health Serv.,
    77 F.3d 1270 (10th Cir. 1996) ................................................. 10

Carton v. Choice Point,
    450 F. Supp. 2d 489 (D.N.J. 2006) ......................................... 17

Conley v. Gibson,
    78 S. Ct. 99 (1957)..................................................................... 4

DiFelice v. Aetna U.S. Healthcare,
    346 F.3d 442 (3d Cir. 2003) ................................................ 9, 15

Ferraro v. City of Long Branch,
    314 N.J. Super. 268 (App. Div. 1998) .................................... 17

Fink v. Dakotacare,
    324 F.3d 685 (8th Cir. 2003) .................................................. 14

Finocchiaro v. Squire Corrugated Container Corp.,
    2007 U.S. Dist. LEXIS 12642 (D.N.J. Feb. 22, 2007) ............. 6

FMC Corp. v. Holliday,
    498 U.S. 52 (1990)................................................................. 6, 7

Ford v. Unum Life Ins. Co. of Am.,
    2009 U.S. App. LEXIS 24514 (3d Cir. Nov. 9, 2009) ............ 11

Graden v. Conexant Sys. Inc.,
    496 F.3d 291 (3d Cir. 2007) ................................................... 16

#1500685 v1
106782-66179

Hiland Dairy, Inc. v. Kroger Co.,
   402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961 (1969) ............................................. 3

Illingworth v. Nestle U.S.A.,
   926 F. Supp. 482 (D.N.J. 1996) .................................................................................................. 6

In re Commissioner of Insurance's March 24, 1992 Order,
   256 N.J. Super. 158 (App. Div. 1992), aff'd, 132 N.J. 209 (1993) ........................................ 18

In re Managed Care Litigation,
   298 F. Supp. 2d 1259 (S.D. Fla. 2003) ............................................................................... 17, 21

Ingersoll-Rand Co. v. McClendon,
   498 U.S. 133 (1980) .................................................................................................................... 5

Jalowiecki v. Leuc,
   182 N.J. Super. 22 (App. Div. 1981) ........................................................................................ 17

Kanne v. Connecticut General Life Ins. Co.,
   867 F.2d 489 (9th Cir. 1988) .................................................................................................... 14

Kentucky. Ass'n of Health Plans, Inc. v. Miller,
   538 U.S. 329 (2003) .................................................................................................................... 6

Knox v. Samsung Elecs. Am.,
   2009 U.S. Dist. LEXIS 53685 (D.N.J. June 24, 2009) ............................................................ 22

Kurtek v. Capital Blue Cross,
   219 F. App'x 184 (3d Cir. 2007) ........................................................................................... 8, 15

Lemelledo v. Beneficial Mgm't Corp.,
   150 N.J. 255 (1997) .................................................................................................................. 18

Lum v. Bank of America,
   361 F.3d 217 (3d Cir. 2004) ..................................................................................................... 25

Mass. Mutual Life Ins. Co. v. Russell,
   473 U.S. 134 (1985) .................................................................................................................. 15

Medical Soc'y of New Jersey v. AmeriHealth HMO, Inc.,
   376 N.J. Super. 48 (App. Div. 2005) ..................................................................... 16, 17, 20, 21

Metropolitan Life Ins. Co. v. Massachusetts,
   471 U.S. 724 (1985) .................................................................................................................... 5

Muse v. IBM,
   103 F.3d 490 (6th Cir. 1996) .................................................................................................... 10

#1500685 v1
106782-66179

Nietzke v. Williams,
    490 U.S. 319 (1989)..................................................................................... 3

Osback v. Lyndhurst Township,
    7 N.J. 371 (1951) ........................................................................................ 17

Phillips v. County of Allegheny,
    515 F.3d 224 (3d. Cir. 2008) ...................................................................... 4

Pierzga v. Ohio Cas. Grp. Of Ins. Cos.,
    208 N.J. Super. 40 (App. Div.), certif. denied, 104 N.J. 399 (1986)....................... 18

Pilot Life Ins. Co. v. Dedeaux,
    481 U.S. 41 (1987)................................................................................ 5, 7, 8, 9

Prudential Ins. Co. of Am. v. National Park Med. Center, Inc.,
    413 F.3d 897 (8th Cir. 2005) ............................................................... 7, 14

Pryzbowski v. U.S. Healthcare, Inc.,
    245 F.3d 266 (3d Cir. 2001) ............................................................ 9, 10, 11

R.J. Gaydos Ins. Agency, Inc. v. National Consumer Ins. Co.,
    168 N.J. 255 (2001) ..................................................................... 17, 18, 21

Ramirez v. STi Prepaid LLC,
    2009 U.S. Dist. LEXIS 21778 (D.N.J. Mar. 17, 2009)........................... 25

Retail Clerks Welfare Fund v. Continental Cas. Co.,
    71 N.J. Super. 221 (App. Div. 1961) ...................................................... 18

Scheibler v. Highmark Blue Shield,
    2007 U.S. App. LEXIS 12977 (3d Cir. Jun. 5, 2007)............................. 11

Scott v. Gulf Oil Corp.,
    754 F.2d 1499 (9th Cir. 1985) .................................................................. 6

Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,
    742 F.2d 786 (3d Cir. 1984) ..................................................................... 25

Stanley v. IBEW,
    2006 U.S. App. LEXIS 27180 (3d Cir. Nov. 1, 2006) ........................... 11

## STATUTES

29 C.F.R. § 2560.503-1(f)..................................................................................... 15

29 C.F.R. § 2560.503-1(g).................................................................................... 15

29 C.F.R. § 2560.503-1(h).................................................................................... 15

#1500685 v1
106782-66179

29 U.S.C. § 1024(b) ................................................................................................ 15

29 U.S.C. § 1101 ...................................................................................................... 1

29 U.S.C. § 1132(a) ............................................................................................. 5, 8

29 U.S.C. § 1144(a) ................................................................................................. 5

29 U.S.C. § 1144(b)(2)(A) ................................................................................. 6, 12

N.J.S.A. § 17:1-15e ................................................................................................ 18

N.J.S.A. § 17:1-28 ................................................................................................. 18

N.J.S.A. § 17:1-8.1 ................................................................................................ 18

N.J.S.A. § 17:48-8.4 .............................................................................................. 12

N.J.S.A. § 17:48A-7.12 ......................................................................................... 12

N.J.S.A. § 17:48E-10.1 .......................................................................................... 12

N.J.S.A. § 17B:26-9.1 ............................................................................................ 12

N.J.S.A. § 17B:26-9.1(e) ........................................................................................ 15

N.J.S.A. § 17B:27A-43 .......................................................................................... 18

N.J.S.A. § 17B:27A-54 .......................................................................................... 18

N.J.S.A. § 17B:30-23 ............................................................................................. 12

N.J.S.A. § 17B:30-55 ............................................................................................. 18

N.J.S.A. § 17B:3-54 ............................................................................................... 18

N.J.S.A. § 26:2J-21 ................................................................................................ 18

N.J.S.A. § 26:2J-24(a) ........................................................................................... 18

N.J.S.A. § 26:2J-8.1 ............................................................................................... 12

N.J.S.A. § 26:2S-16 ............................................................................................... 18

N.J.S.A. § 26:2S-18 ............................................................................................... 18

## **OTHER AUTHORITIES**

Jordan, Pflepsen & Goldberg,
    Handbook on ERISA Litig. § 3.06[C] at 3-56 ................................................... 14

#1500685 v1
106782-66179

## RULES

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 3, 26

Fed. R. Civ. P. 8 ..................................................................................................... 3, 4, 24, 25

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 4

Fed. R. Civ. P. 9 ................................................................................................................ 3

Fed. R. Civ. P. 9(b) ..................................................................................................... 24, 25

## REGULATIONS

N.J.A.C. § 1:22-5.6(b) ..................................................................................................... 12

N.J.A.C. § 11:22-5 ............................................................................................................ 18

N.J.A.C. § 11:24-5.1(a) ........................................................................................... 12, 17, 24

N.J.A.C. § 11:24-5.1(a) ..................................................................................................... 18

N.J.A.C. § 11:24-5.3 ......................................................................................................... 23

N.J.A.C. § 11:24-5.3(b) ........................................................................................... 12, 17, 18

N.J.A.C. § 11:24-9.1 ......................................................................................................... 15

N.J.A.C. § 11:24-9.1(d) ....................................................................................... 12, 17, 18, 23

N.J.A.C. §11:24 ................................................................................................................ 18

#1500685 v1
106782-66179

Defendants CIGNA Healthcare of New Jersey, Inc. and CIGNA Corporation (collectively, "CIGNA") respectfully submit this memorandum of law in support of their renewed motion to dismiss Plaintiff North Jersey Brain & Spine Center's ("Plaintiff" or "NJBSC") Complaint against them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the Court's convenient reference, the Complaint is attached as an appendix to this memorandum.  For the reasons set forth below, CIGNA requests that NJBSC's Complaint be dismissed in its entirety.

## PROCEDURAL HISTORY ON THE MOTION

CIGNA originally filed a Motion to Dismiss on July 6, 2009.  Docket Entry ("D.E.") # 7.  Shortly thereafter, Plaintiff filed a motion to remand this matter to the Superior Court of New Jersey.  D.E. # 9.  Magistrate Judge Arleo issued a Report and Recommendation that the Motion to Remand be denied on January 12, 2010.  D.E. # 17.  Plaintiff filed an Objection to the Report and Recommendation.  D.E. # 18.  While the Objection was pending, on February 23, 2010, this Court administratively dismissed CIGNA's original Motion to Dismiss without prejudice and further provided that CIGNA could renew its motion to dismiss within 7 days of the entry of the Court's ruling on Plaintiff's Objection.  D.E. # 22.  On March 5, 2010, this Court overruled Plaintiff's Objection and adopted Judge Arleo's Report and Recommendation as the Order of the Court.  D.E. # 26.  This is CIGNA's renewed Motion to Dismiss pursuant to the Court's February 23, 2010 Order.

## INTRODUCTION

As CIGNA has pointed out a number of times in this action already, this action is nothing more than a typical ERISA[1] case, arising out of a claim for health benefits pursuant to health benefit plans administered by CIGNA or its affiliates and made available by employers as an employee benefit.  Plaintiff's attempts to paint it as something else have been unavailing.

---

[1] The Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1101, et seq.

Plaintiff, a healthcare provider, bases its case on the alleged fact that CIGNA has not properly paid for services it rendered to its patients who were members of health care plans administered by CIGNA or its affiliates.  Plaintiff does not contract with CIGNA.  The subject plans are offered as employee benefits by employers.[2]  As such, the plans are governed by ERISA.  Plaintiff's Complaint is composed exclusively of state-based common law and state statutory claims.  Counts One and Four allege unjust enrichment and fraud.   Counts Two and Three purport to raise claims under various New Jersey statutes and regulations.

Pursuant to ERISA's broad preemptive effect, each of these claims must be dismissed. Indeed, in the remand proceedings, Plaintiff conceded that its state common law claims are preempted.  See D.E. # 25-2 at 5:8-12.  Plaintiff further conceded that the claims based upon New Jersey statutes and regulations were preempted to the extent they deal with self-insured plans.  Id. at 6:1-3.  Fifteen of the twenty-eight patients here have self-insured plans.  By the time Plaintiff's remand motion was fully submitted to the Court, the only remaining controversy was whether, as to Counts Two and Three, ERISA preemption applied to the patients with insured plans.  Judge Arleo found that ERISA preemption applied to those claims too, because these claims would otherwise "supplement ERISA's exclusive remedial scheme."  D.E. # 17 at 9.  Of course, that ruling has been adopted as the Order of the Court and is now the law of the case. D.E. # 26.  Although the issue previously before the Court was its removal jurisdiction, the Judge Arleo's ruling is also dispositive of the substantive preemption question under ERISA Section 502, as discussed below.

Moreover, regardless of the preemption question, all of the claims in the Complaint contain multiple, fatal, legal flaws.  The state statutory causes of action alleged by Plaintiff provide no private right of action, even if they were not preempted by ERISA.  Moreover, even on their own terms, the causes of action make no sense.  Plaintiff alleges that CIGNA should

---

[2] See Declaration of June Ann Hendrik, attached hereto and as an exhibit to Defendants' Notice of Removal.  D.E. # 1-2.

#1500685 v1
106782-66179

have paid 100% of these providers' bills, but the ERISA plans provide no such thing and the state statutes on which Plaintiff relies only require an insurer to comply with the terms of its plan or policy documents.  The Complaint lacks sufficient detail regarding what CIGNA actually did to harm Plaintiff in order to plead a plausible claim under the Federal Rule of Civil Procedure 8 and lacks the particularity in the fraud claim required by Rule 9.  Plaintiff alleges the CIGNA was unjustly enriched, a claim that defies logic.

In summary:  (i) Plaintiff's alleged causes of action are preempted by federal law, (ii) the state laws on which Plaintiff relies provide no private right of action and, even if they did, (iii) the complaint fails to allege facts that would sustain a cause of action under plaintiff's state law theories.  For any and all of these several reasons, the Complaint must be dismissed in its entirety.

## ARGUMENT

## I.      THE MOTION TO DISMISS STANDARD

### A.      Rule 12(b)(6) Requires Dismissal of Claims That are Invalid as a Matter of Law

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of claims that fail to state a valid cause of action as a matter of law.  A motion to dismiss counts in a complaint can serve to dispense with those issues which, as a matter of law, are incapable of supporting a judgment or verdict in the claimant's favor.  Nietzke v. Williams, 490 U.S. 319, 326-27 (1989) (the Rule 12(b)(6) procedure "streamlines litigation by dispensing with needless discovery and factfinding"); Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973 (8th Cir. 1968) (motion to dismiss "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties"), cert. denied, 395 U.S. 961 (1969).

In order to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The Supreme Court recently revisited and

- 3 -

endorsed this basic rule in <u>Ashcroft v. Iqbal</u>, 2009 U.S. LEXIS 3472, * 29 (May 18, 2009).  A complaint must set forth sufficiently detailed, credible factual allegations which are able to "raise a right to relief above the speculative level."  <u>Twombly</u>, 127 S. Ct. at 1964.  Accordingly, a court will not accept bald assertions, untenable inferences, or unsupported legal conclusions disguised as factual allegations.  <u>See</u> <u>id</u>. at 1964-65  ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citations omitted).

An essential function of the complaint is to afford the defendant fair notice of the claim. Federal Rule of Civil Procedure 8(a)(2) requires the complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Twombly</u>, however, makes clear that the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  127 S. Ct. at 1964 (citing to <u>Conley v. Gibson</u>, 78 S. Ct. 99 (1957)).  Indeed, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft</u>, 2009 U.S. LEXIS 3472 at *28 (citing to <u>Twombly</u>, 127 S. Ct. at 1964).

Following <u>Twombly</u>'s direction, the Third Circuit has acknowledged that situations may arise where "the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d. Cir. 2008).  The Court of Appeals went on to say that in light of the Supreme Court's ruling in <u>Twombly</u>, "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief…[and] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."  <u>Id</u>.  "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  <u>Ashcroft</u>, 2009 U.S.

#1500685 v1
106782-66179

LEXIS 3472 at *30.  Therefore, where a complaint has not alleged sufficient facts to state a plausible, credible claim, giving fair notice to the defendant, it will be dismissed.

## II.    ERISA PREEMPTION

### A.    The ERISA Preemption Provisions

ERISA contains two statutory provisions that preempt state law causes of action.  The first is Section 502(a), 29 U.S.C. § 1132(a), which sets forth a comprehensive civil enforcement scheme and forecloses any state law claim that falls within its zone of influence.  In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), the Supreme Court described the broad preemptive effect of Section 502(a):

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Id. at 54.

ERISA's second preemption provision, which effectuates what is known as "express preemption," is set out in Section 514(a), 29 U.S.C. § 1144(a).  Section 514 preempts "any and all state laws" that "relate to any employee benefit plan."  The Supreme Court has recognized that express preemption under Section 514(a) is "deliberately expansive."  Pilot Life, 481 U.S. at 46.  Indeed, a state law "relates to" an ERISA benefit plan when "it has a connection with or reference to such a plan," Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985), or when "the existence of [an ERISA] plan is a critical factor in establishing liability."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1980).

Taken together, these two sections give ERISA a preemptive effect with few parallels in this country's laws.  Writing with respect to Section 502, the Supreme Court has held:  "[A]ny

- 5 -

state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." Davila, 542 U.S. at 209.  Section 514 "establishes as an area of federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) (quotation omitted) (alteration in original).  Indeed, ERISA's preemptive effect extends to both common law and statutorily based causes of action.  See, e.g., Finocchiaro v. Squire Corrugated Container Corp., 2007 U.S. Dist. LEXIS 12642, * 7-8 (D.N.J. Feb. 22, 2007) ("'ERISA preemption extends to state common-law causes of action as well as state regulatory statutes, and claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans.'") (quoting Scott v. Gulf Oil Corp., 754 F.2d 1499, 1504 (9th Cir. 1985)); Illingworth v. Nestle U.S.A., 926 F. Supp. 482, 492 (D.N.J. 1996) (noting that the Supreme Court had "rejected the view that common law causes of action or state regulatory statutes are preempted only when they attempt to regulate an area expressly covered by ERISA, such as reporting, disclosure and fiduciary responsibilities," and finding that "[b]ecause [Plaintiff's] claim relates to an employee benefit plan, ERISA preempts New Jersey law, and any entitlement to relief is governed by federal law.").

ERISA's preemptive scheme, though nearly absolute, does contain certain narrow exceptions.  Pursuant to the "savings clause" embodied in Section 514(a), 29 U.S.C. § 1144(b)(2)(A), state laws "regulating insurance, banking or securities" remain viable, even if they would otherwise be subject to the preemptive effect of Section 514(a).  The shield provided by the "savings clause" is, however, quite limited.  For instance, the Supreme Court has found that "a state law must be 'specifically directed toward' the insurance industry in order to fall under ERISA's savings clause; laws of general application that have some bearing on insurers do not qualify." Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 334 (2003).

- 6 -

#1500685 v1
106782-66179

Moreover, the "savings clause" does not limit the preemptive sweep of Section 502's "comprehensive" and "deliberately expansive" civil enforcement scheme.  Indeed, "even a state law that can arguably be characterized as 'regulating insurance' will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." Davila, 542 U.S. at 217-18.  Thus, to the extent a state law regulating insurance provides a civil remedy for the improper processing of a claim for benefits, it is preempted notwithstanding the applicability of the "savings clause." Pilot Life Ins. Co., 481 U.S. at 57; see also Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134, 141 (3d Cir. 2004) ("[E]ven if [Pennsylvania's bad faith insurance claim statute] were found to 'regulate insurance' under the saving clause, it would still be preempted because the punitive damages remedy supplements ERISA's exclusive remedial scheme."); Prudential Ins. Co. of Am. v. National Park Med. Center, Inc., 413 F.3d 897, 513-14 (8th Cir. 2005) (Arkansas Patient Protection Act "saved" from preemption under Section 514(b), but civil penalties preempted under Section 502 with respect to suits that could have been brought under ERISA).

Finally, the savings clause has no application at all to benefit plans that are self-insured, as are fifteen of the twenty-eight plans at issue in this case.  See Second Declaration of June Ann Hendrik, D.E. # 13-1 at ¶ 4.  The savings clause, itself an exception to preemption under Section 514, is itself subject to an exception -- the so-called "deemer clause" of Section 514.  See 29 U.S.C. § 1144(b)(2)(B).  It provides that employee benefit plans, distinct from their insurers, will not be considered insurance companies for the purposes of the savings clause.  Consequently, ERISA preemption is not affected by the savings clause with respect to self-insured plans.  FMC, 498 U.S. at 61.  As set forth in the Declaration of June Ann Hendrik, fifteen of the twenty-eight individual patients, plaintiff's assignors on which its claims depend, were members of self-insured plans.  See D.E. # 13-1 at ¶ 4.

- 7 -

**B.**      **ERISA Preempts Remedies Not Consistent With Its Remedial Scheme**

Plaintiff's Complaint asserts only state-based causes of action.  For each count asserted, Plaintiff seeks punitive and consequential damages.  Plaintiff's assertions of punitive and consequential damages are subject to an immediate dismissal with prejudice.  Simply, Plaintiff seeks damages that are not recoverable under ERISA's comprehensive civil enforcement scheme.  The remedies available to an ERISA claimant such as Plaintiff are set out in Section 502(a), which provides, in pertinent part:

> A civil action may be brought --
>
> (1) by a participant or beneficiary …
>
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a) (emphasis added).  The United States Supreme Court has distilled this provision to find that "[u]nder § 502(a), a beneficiary may obtain accrued benefits due, a declaratory judgment about entitlement of benefits, or an injunction to require the administrator to pay benefits."  See Pilot Life Ins. Co., 481 U.S. at 53; see also Davila, 542 U.S. at 211 ("Upon denial of the benefits, respondents could have paid for the treatment themselves and then sought reimbursement through a § 502(a)(1)(B) action, or sought a preliminary injunction.") (internal citations omitted).  The Third Circuit has adopted this interpretation of ERISA remedies.  Kurtek v. Capital Blue Cross, 219 F. App'x 184, 186 (3d Cir. 2007).  In Kurtek, the Court of Appeals squarely held that, where the plaintiffs argued that they could not have brought their claims under § 502 because they were challenging the delayed approval of a medical procedure rather than a denial of benefits, the plaintiffs "could have sought an injunction under § 502(a) to

- 8 -

accelerate the approval…or could have paid for the [procedure] and then sought reimbursement." Id.

This rule, too, is a function of ERISA preemption.  As the Third Circuit reasoned in DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 452 (3d Cir. 2003):  "Because under our most recent controlling precedent, Pryzbowski, DiFelice's claim that Aetna was negligent in determining that the special tube was 'medically necessary' could have been the subject of a suit under section 502(a) for benefits due under the Plan, his claim is preempted by ERISA."  Id.  at 464 ("As discussed above, existing Supreme Court precedent holds that ERISA disallows extracontractual damages even in instances of bad faith, an interpretation that gives safe harbor to HMOs that deny claims.") (Becker, J, concurring); Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272 (3d Cir. 2001) ("Had Pryzbowski sought to accelerate U.S. Healthcare's approval of the use of out-of-network providers, she could have sought an injunction under § 502(a) to enforce the benefits to which she was entitled under the plan, thereby using the provisions of the civil enforcement scheme provided by Congress.").

The Supreme Court has confirmed that an ERISA claimant's remedies are limited to those expressly set out in Section 502(a).  In Pilot Life Ins. Co., the Court discussed the exclusivity of those remedies:

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."

- 9 -

> **The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.** This conclusion is fully confirmed by the legislative history of the civil enforcement provision.

481 U.S. at 54 (internal citations omitted) (emphasis added). Moreover, while ERISA's civil enforcement scheme may leave claimants seeking only extra-contractual damages without a remedy, this is by Congressional design and "is not germane to [a] preemption analysis." Cannon v. Group Health Serv., 77 F.3d 1270 (10th Cir. 1996); see also Muse v. IBM, 103 F.3d 490 (6th Cir. 1996) ("The nature of ERISA preemption is not altered by the fact that some plaintiffs may be left without a meaningful remedy."). Indeed, the Third Circuit has cautioned that "[i]t is for Congress and not the courts to decide whether it is sound policy for our health care system to limit or channel the relief available or whether ERISA should allow for broader remedies in the world of managed care." Pryzbowski, 245 F.3d at 282.

In the case at bar, Plaintiff not only makes a claim for benefits, but also seeks punitive and consequential damages. As the case law discussed above makes clear, such claims are not cognizable under ERISA's civil enforcement scheme and must be dismissed.

## III. EACH OF PLAINTIFF'S INDIVIDUAL CLAIMS IS PREEMPTED BY ERISA AND MUST BE DISMISSED

Each of Plaintiff's current causes of action must be dismissed as improperly pled ERISA claims. Specifically, as discussed above, all of Plaintiff's claims arise under New Jersey law and are based on CIGNA's allegedly wrongful administration of its members' health benefits. Accordingly, ERISA preempts each of those claims.

### A. Counts One and Four - Unjust Enrichment and Misrepresentation

In Count One, Plaintiff attempts to make a claim for unjust enrichment. This cause of actions appears to be premised on the surprising assertion that CIGNA benefited by Plaintiff's rendering of services to its patients. In Count Four, Plaintiff asserts that CIGNA made false

#1500685 v1
106782-66179

promises to pay and therefore made misrepresentations to Plaintiff.  Regardless of whether Plaintiff has even pled viable causes of action, which CIGNA maintains that it has not, such claims are preempted by ERISA.

As set forth <u>supra</u>,  Plaintiff's claims for unjust enrichment and misrepresentation are simply causes of action that duplicate, supplement, or supplant the ERISA civil enforcement remedy, conflict with the "clear congressional intent to make the ERISA remedy exclusive" and are therefore preempted.  <u>See</u> <u>Davila</u>, 542 U.S. at 209; ); <u>see also</u> <u>Scheibler v. Highmark Blue Shield</u>, 2007 U.S. App. LEXIS 12977, at *7 (3d Cir. Jun. 5, 2007) (affirming district court's dismissal of state law claims, including unjust enrichment, as preempted by ERISA); <u>Stanley v. IBEW</u>, 2006 U.S. App. LEXIS 27180, at *7 (3d Cir. Nov. 1, 2006) (same).  These are garden-variety ERISA claims for benefits under an ERISA plan.  Such a claim, "no matter how couched," <u>Pryzbowski</u>, 245 F.3d at 273, is plainly and unequivocally preempted.  <u>See also</u> <u>Ford v. Unum Life Ins. Co. of Am.</u>, 2009 U.S. App. LEXIS 24514, at *4 (3d Cir. Nov. 9, 2009) (citing <u>Pryzbowski</u> in affirming lower court's determination that plaintiff's state law claims, including breach of contract, were preempted).  In fact, Plaintiff has conceded that these causes of action are preempted under ERISA.

> Court:  [L]et's talk about unjust enrichment and misrepresentation. Are those at issue --  is your position that those two claims are preempted under ERISA or not?
>
> Plaintiff's Counsel:  Those claims would be preempted.

D.E. # 25-2 at 5:8-12.  This concession is plainly correct on the law, consistent with countless federal cases holding that state common law causes of action are preempted where ERISA plan benefits are at stake.  Therefore, Counts One and Four of the Complaint should be dismissed.

#1500685 v1
106782-66179

**B.     Counts Two and Three - Violations of New Jersey Regulations Governing Payment for Emergency Services and Violations of the New Jersey Healthcare Information Networks and Technologies and Health Claims Authorization, Processing, and Payment Acts**

Plaintiff contends, generally, that CIGNA's conduct, as alleged in the Complaint, is actionable under New Jersey regulations governing payment for emergency services, N.J.A.C. §§ 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d), as well as portions of the New Jersey Healthcare Information Networks and Technologies Act ("HINT Act"), N.J.S.A. §§ 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and certain portions of the Health Claims Authorization, Processing, and Payment Act ("HCAPPA") that amend the HINT Act.  Assuming that Plaintiff is entitled to bring a lawsuit under these regulatory and statutory schemes (which is not the case, as discussed infra), any such claim would be preempted by ERISA and subject to dismissal.

Plaintiff can be expected to argue that the New Jersey regulations governing payment for emergency services, the HINT Act, and the HCAPPA are laws "regulating insurance" and, accordingly, are shielded from § 514(a) preemption pursuant to the "savings clause" embodied in 29 U.S.C. § 1144(b)(2)(A).  CIGNA does not concede that these laws "regulating insurance" as the large body of ERISA case law has construed this phrase in the statute.  But, this argument has no application at all to those claims raised by Plaintiff that concern services rendered to beneficiaries of self-funded plans.  As discussed above, the "deemer clause" carves these plans out of the reach of the "savings clause."  Plaintiff has conceded that any state law claim as to these patients -- based on an insurance regulation or not -- is preempted as "relating to" a self-insured ERISA benefit plan.  D.E. # 25-2 at 6:1-3.   As set forth by Ms. Hendrik, fifteen of the twenty-eight claims at issue here concern self-insured plans.  See D.E. # 13-1.  Consequently, Counts Two and Three should be dismissed as to the self-funded plans.  The balance of this section concerns the remaining thirteen claims.

#1500685 v1
106782-66179

As to the remaining thirteen claims based upon insured employee benefit plans, even if the state statutes and regulations are within the scope of the savings clause, the savings clause does not save these insured claims from preemption because plaintiff also relies on them to pursue a civil claim for benefits.  See Aetna Health, Inc. v. Davila, 542 U.S. 200, 217-18 (2004). In fact, Judge Arleo has expressly held that a claim based on these state laws would "supplement ERISA's exclusive remedial scheme" and are preempted under Section 502.  D.E. # 17 at 9.  As discussed above, the "savings clause" does not operate to save a statutory or regulatory cause of action that is otherwise preempted as conflicting with the remedial scheme embodied in Section 502(a) of ERISA.  As the United States Supreme Court has held, "even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." Davila, 542 U.S. at 217-18.

As discussed below, the state regulations that Plaintiff raises, the HINT Act, and the HCAPPA, provide no private right of action as a matter of New Jersey state law.  Assuming, arguendo, that such private rights of action did exist under the state law in favor of persons seeking reimbursement from an ERISA-regulated benefits plan, those rights of action would be preempted.  Direct claims under the portions of the New Jersey Administrative Code, the HINT Act, and the HCAPPA, such as those asserted by Plaintiff alleging that benefits were wrongly denied either "supplement" the ERISA remedies, Barber, 383 F.3d at 141, are exactly congruent with those remedies, Davila, 542 U.S. at 209, or conflict with them.  Id.  Indeed, Judge Arleo has already so held in this action.  D.E.# 17 at 9 ("Specifically, New Jersey's prompt pay laws and emergency services reimbursement regulations . . . supplement ERISA's exclusive remedial scheme.").  However construed, any such hypothetical private rights of action as alleged by Plaintiff would be preempted by Section 502, regardless of the saving effect of Section 514(b)(2)(a).

#1500685 v1
106782-66179

Not surprisingly, state laws creating private causes of action to enforce state minimum benefits laws exist in various jurisdictions.  The federal courts have routinely found that these laws are completely preempted under Section 502(a), for the obvious reason that such laws would interfere with the Congressionally-mandated system under ERISA.  See e.g., Prudential Ins. Co. of Am. v. National Park Med. Center, Inc., 413 F.3d 897, 513-14 (8th Cir. 2005) (civil penalties under Arkansas Patient Protection Act preempted under Section 502 with respect to suits that could have been brought under ERISA); Fink v. Dakotacare, 324 F.3d 685, 689 (8th Cir. 2003) (claim under South Dakota's unfair insurance practices act is preempted because the remedy conflicts with ERISA civil enforcement remedies); see also Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134, 141 (3d Cir. 2004) (assuming Pennsylvania punitive damages statute regulates insurance, it is nevertheless preempted because the remedy supplements ERISA's exclusive remedial scheme); Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir. 1988) (California statute allowing for compensatory and punitive damages preempted without regard to the savings clause because the court found that it supplemented the ERISA civil enforcement remedies); Jordan, Pflepsen & Goldberg, Handbook on ERISA Litig. § 3.06[C] at 3-56 ("courts have generally held that state insurance statutes providing private rights of action are preempted because they infringe upon the exclusive civil enforcement remedies provided in ERISA § 502").

This result is obvious with respect to minimum-benefit mandates under state law.  It is also true with respect to claims processing requirements under state law.  Indeed, in Pryzbowski itself, the Court of Appeals rejected that argument that a delay in claims processing created a claim outside ERISA's scope.  245 F.3d at 273 ("ultimate" question is "whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted") (emphasis added).  As the Court will be aware, ERISA and the regulations promulgated thereunder have extensive and complex claims processing requirements.  For example, like the New Jersey regulation Plaintiff cites, federal ERISA

- 14 -

regulations require that claims be processed within a certain period of time. 29 C.F.R.
§ 2560.503-1(f). Numerous other parallels exist between the New Jersey and ERISA
requirements. Compare 29 C.F.R. § 2560.503-1(h) (internal appeal procedures) with N.J.S.A.
§ 17B:26-9.1(e) (same); compare 29 U.S.C. § 1024(b) (obligation to provide summary plan
description) with N.J.A.C. § 11:24-9.1 (obligation to provide "summary of the evidence of
coverage"). The ERISA regulations specify what a benefit determination must contain,
including "[t]he specific reason or reasons for the adverse determination." 29 C.F.R.
§ 2560.503-1(g). The alleged omission of this information is among Plaintiff complaints under
its New Jersey HINT and HCAPPA claims. See Complaint ("Compl.") at 5, ¶¶ iii-v.

Of course, Section 502(a) itself provides that beneficiaries (and thus their assignees) may
bring suit "to enforce any provisions of this title or the terms of the plan." Plaintiff's theory of
liability under the New Jersey claims processing laws, if it held water at all, would plainly
duplicate, supplement and/or and conflict with this entire body of ERISA law and its civil
enforcement scheme. Indeed, that proposition is already the law of this case. DE # 17 at 9. It is,
therefore, completely preempted under Section 502. See Kurtek v. Capital Blue Cross, 219 F.
App'x 184, 186 (3d Cir. 2007) (rejecting argument that plaintiffs could not have brought their
claims under § 502 because they were challenging the delayed approval of a medical procedure
rather than a denial of benefits, and holding that plaintiffs "could have sought an injunction
under § 502(a) to accelerate the approval . . . or could have paid for the [procedure] and then
sought reimbursement.").

Additionally, Plaintiff seeks to use the state laws to obtain relief, including punitive and
consequential damages, which are not available under ERISA. See Mass. Mutual Life Ins. Co. v.
Russell, 473 U.S. 134, 146 (1985) ("The six carefully integrated civil enforcement provisions
found in § 502(a) of the statute as finally enacted, however, provide strong evidence that
Congress did not intend to authorize other remedies that it simply forgot to incorporate
expressly."); DiFelice, 346 F.3d at 458 ("a string of Supreme Court cases has interpreted ERISA

#1500685 v1
106782-66179

to disallow any recovery of compensatory or punitive damages") (citing <u>Mass. Mutual Life Ins.</u>

<u>Co.</u>, 473 U.S. at 146); <u>see</u> <u>also</u> <u>Graden v. Conexant Sys. Inc.</u>, 496 F.3d 291, 300 n.13 (3d Cir.

2007) ("compensatory and punitive relief . . . are not actually part of the ERISA entitlement").

Accordingly, if Plaintiff could bring a private cause of action, which as noted <u>supra</u> and

discussed <u>infra</u>, it cannot under New Jersey law, these claims are preempted by ERISA and must

be dismissed as they conflict with ERISA's remedial scheme.

## IV.   THE NEW JERSEY STATUTORY AND REGULATORY SCHEMES ASSERTED BY PLAINTIFF DO NOT PROVIDE PRIVATE RIGHTS OF ACTION.

As discussed above, Plaintiff's claims under the enumerated state regulations, the HINT

Act, and the HCAPPA must be dismissed, as Plaintiff seeks to use the state statutes and

regulations to obtain relief that "duplicates, supplements or supplants the ERISA civil

enforcement remedy." <u>Davila</u>, 542 U.S. at 209.  Moreover, even if the Court were to determine

that Plaintiff's claims are not defeated by ERISA's broad preemptive scheme, those claims <u>still</u>

fail as a matter of law.  Simply, these causes of action do not exist under New Jersey law.

### A.   There Is No Private Right of Action Under the HINT Act and Subsequently the HCAPPA

Plaintiff claims that CIGNA violated the HINT Act (and subsequently by default the

HCAPPA because it amended the HINT Act by updating the necessary timeframes to remit

payment as to electronic claims), alleging that CIGNA did not remit 100% payment of the bills

Plaintiff submitted within the allotted timeframes.  <u>See</u> Compl., Count Three at ¶¶ 1-5.  In so

pleading, Plaintiff ignores the fundamental nature of the HINT Act.  "The Act does not

specifically authorize private parties to file enforcement actions." <u>Medical Soc'y of New Jersey</u>

<u>v. AmeriHealth HMO, Inc.</u>, 376 N.J. Super. 48, 59 (App. Div. 2005).  Rather, "[t]he Act, by its

terms, is to be enforced by the Commissioner of Banking and Insurance, who, in conjunction

with the Commissioner of Health and Senior Services, is to adopt regulations to further the

purposes of the Act." <u>Id.</u>  The case law applying that statute is clear: there is simply no private

#1500685 v1
106782-66179

cause of action under the HINT Act.  Accordingly, the Third Count of Plaintiff's Complaint must be dismissed, in its entirety and with prejudice.

### B. There Is No Private Right of Action Under the Enumerated State Regulations

Similarly, Plaintiff does not have a private right of action under the listed New Jersey Regulations it asserts in the Second Count of the Complaint.  Plaintiff claims that N.J.A.C. §§ 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d) give it an express or implied private right of action to "prosecute its claim under these regulations."  See Compl., Count Two at ¶ 4.  The only reported decision of which CIGNA is aware regarding an actual holding on this issue is In re Managed Care Litigation, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), which found that the Prompt Pay statutes of New Jersey and 29 other states did not provide a private cause of action, and dismissed on that ground.  Id. at  1299-1300 & n.22.

Review of more general New Jersey law on when a private cause of action may be implied shows that the In re Managed Care court was correct and that no such private cause of action exists in this case.  As a threshold matter, "the breach of administrative regulations does not of itself give rise to a private cause of action . . ."  Ferraro v. City of Long Branch, 314 N.J. Super. 268, 287 (App. Div. 1998).  Rather, the courts will look to the statutory schemes involved.  Jalowiecki v. Leuc, 182 N.J. Super. 22, 28 (App. Div. 1981).  It is settled law, however, that the New Jersey Supreme Court will not infer a statutory private right of action where the Legislature has not provided for one expressly.  R.J. Gaydos Ins. Agency, Inc. v. National Consumer Ins. Co., 168 N.J. 255, (2001) (citing Osback v. Lyndhurst Township, 7 N.J. 371 (1951)).  This is particularly true where the statute contains civil penalties for enforcement. In such cases, the New Jersey courts will not imply a private right of action where one is not expressly set forth.  Carton v. Choice Point, 450 F. Supp. 2d 489, 499-500 (D.N.J. 2006); Medical Soc'y of New Jersey, 376 N.J. Super. at 59 .

#1500685 v1
106782-66179

This doctrine has frequently been applied in the area of statutes that regulate insurance. The New Jersey Supreme Court explained:

> [W]here there is no discernable legislative intent to authorize a private cause of action in a statutory scheme that already contains civil penalty provisions, the courts will not infer a private cause of action.  As the Appellate Division [has] noted . . . , "[w]henever the Legislature intended to create civil penalties for violations of insurance statutes, regulations and Department orders, it knew how to do so. . . .  Implied remedies are unlikely to be intended by a Legislature that enacts a comprehensive legislative scheme including an integrated system of procedures for enforcement."

R.J. Gaydos, 168 N.J. at 275 (quoting In re Commissioner of Insurance's March 24, 1992 Order, 256 N.J. Super. 158, 176 (App. Div. 1992), aff'd, 132 N.J. 209 (1993)).  Cf. Lemelledo v. Beneficial Mgm't Corp., 150 N.J. 255, 264 (1997) (no private right of action under Insurance Trade Practices Act, Insurance Producer Licensing Act or Credit Life and Health Insurance Act); Pierzga v. Ohio Cas. Grp. Of Ins. Cos., 208 N.J. Super. 40, 47 (App. Div.), certif. denied, 104 N.J. 399 (1986) (no private right of action under Insurance Trade Practices Act); Retail Clerks Welfare Fund v. Continental Cas. Co., 71 N.J. Super. 221, 226 (App. Div. 1961) (prohibition on discriminatory and deceptive trade practices under Insurance Trade Practices Act do not imply private right of action).  See R.J. Gaydos, 168 N.J. at 275 (quoted supra).

The state regulations from which Plaintiff purports to seek relief, N.J.A.C. §§ 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d), are promulgated under the authority and statutory schemes of N.J.S.A. §§ 17:1-8.1, 17:1-15(e), 26:2J-21, 26:2S-18, 17B:3-54, and 17B:27A-54.  See N.J.A.C. §§ 11:22-5 and 11:24.  None of these statutes contains an express, private right of action for its enforcement or redress of violations.  Instead, each statute provided for enforcement by the State and for civil penalties.  See N.J.S.A. §§ 17:1-28, 26:2J-24(a), 26:2S-16, 17B:30-55, and 17B:27A-43 (enforcement by Commissioners of Health and Banking and Insurance and providing for administrative penalties and to collect civil penalties on behalf of the State in event of non-compliance).  There is no express private right of action in the

- 18 -

language of the statutes.  Indeed, the Legislature's intentions are made clear by the inclusion of administrative enforcement procedures.

One may read the state statutes and regulations raised by Plaintiff in vain to find any suggestion that they create a duty to Plaintiff.  For ease of reference, they are summarized in this table:

| Law/Regulation | Summary | Remedy |
|---|---|---|
| N.J.S.A. 17B:30-23 | Timetable for the Comm'r to establish a timetable for implementation of electronic claims administration--no enforcement provision at all | None |
| N.J.S.A. 17:48-8.4 | Standards for processing electronic claims | Civil penalty payable to Comm'r or State |
| N.J.S.A. 17:48A-7.12 | Standards for processing electronic claims | Civil penalty payable to Comm'r or State |
| N.J.S.A. 17:48E-10.1 | Standards for processing electronic claims | Civil penalty payable to Comm'r or State |
| N.J.S.A. 17B:26-9.1 | Standards for processing electronic claims | Civil penalty payable to Comm'r or State |
| N.J.S.A. 17B:27-44.2 | Standards for processing electronic claims | Civil penalty payable to Comm'r or State |
| N.J.S.A. 26:2J-8.1 | Standards for processing electronic claims | Civil penalty payable to Comm'r or State |
| N.J.A.C. 11:22-5.6(b), | Standards for coverage under insurance contracts | None, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |
| N.J.A.C. 11:24-5.3(b), | Standards for coverage of emergency and urgent care | None, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |
| N.J.A.C. 11:24-5.1(a), | Standards for provision of health care services | None, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |

- 19 -

#1500685 v1
106782-66179

| Law/Regulation | Summary | Remedy |
|---|---|---|
| N.J.A.C. 11:24-9.1(d) | Standards for the statement of members' rights | None, however the statutes under which it is promulgated provides for civil penalties payable to Comm'r or State |

The Order of Commissioner Goldman, A07-59 dated July 23, 2007, (the "Goldman Order") which Plaintiff has previously cited[3] actually undermines Plaintiff's position.  See D.E. # 9 at 3-4.  In the Goldman Order, the Commissioner of the Division of Banking and Insurance ("DOBI") directs Aetna Health, Inc. to comply with certain of the mandatory benefits statutes listed in the table above.  The Goldman Order removes any lingering doubt that enforcement of these benefit statutes is conducted as regulatory proceeding by DOBI, not through private litigation by providers in the Courts.

The issue of whether there was a duty independent of the ERISA relationship was argued in the proceedings on Plaintiff's remand motion and decided against Plaintiff.  D.E. # 17 at 6 ("Accordingly, here, no independent legal duty exists concerning Plaintiff's New Jersey statutory and regulatory claims involving the fully insured plans.").  In support of its claim of a private right of action, Plaintiff cited the New Jersey Appellate Division's opinion in Medical Soc'y of New Jersey, 376 N.J. Super. at 58, where it wrote that "the HINT Act may provide a private cause of action for doctors."  D.E. # 9 at 7 (emphasis added).  But the Appellate Division expressly declined to reach the issue because the doctors were not parties to the action.  Id. ("We need not decide that issue here . . . .").

---

[3] Plaintiff stated that the Goldman Order was attached as Exhibit A to its brief.  Neither the electronically filed copy of the brief, the other papers submitted in support of the Motion to Remand nor any document served on CIGNA in this action contain that document.  We have relied upon the document corresponding to this description submitted by Plaintiff in North Jersey Brain & Spine Center v. Healthnet, Inc., Civ. No. 08-4414 (JAG) at D.E. # 12.

- 20 -

In fact, the Medical Society of New Jersey panel applied the same analysis advanced by CIGNA and set forth in Gaydos and In re Managed Care to find that the Medical Society had no private right of action:

> We generally do not infer a private right of action where the statutory scheme contains civil penalty provisions. This is specifically the case with insurance statutes.
>
> Applying these principles, we conclude that the Medical Society cannot maintain a private lawsuit to enforce the HINT Act. The Act does not specifically authorize private parties to file enforcement action. The Act, by its terms, is to be enforced by the Commissioner of Banking and Insurance, who, in conjunction with the Commissioner of Health and Senior Services, is to adopt regulations to further the purposes of the Act. . . . . [Additional enforcement mechanisms available to the Commissioners are listed.]
>
> Consequently, the Medical Society may file its complaint with either or both of the Commissioners, and request that they investigate and prosecute under their statutory enforcement powers. But we conclude that there is no basis in the Act to infer a private right of action for the Medical Society.

Medical Soc'y of New Jersey, 376 N.J. at 59-60 (citations and internal quotations omitted).

The above analysis of the HINT Act is convincing and there is no reason it would not apply with equal force to medical providers. The New Jersey Legislature has created an extensive and reticulated administrative system to enforce the Act and its regulations. Plaintiff has essentially appointed itself a private attorney general to enforce a general statute of the State of New Jersey. This is not permissible; Plaintiff has no legal right to raise a private claim under the statutory and regulatory schemes it asserts. Accordingly, the Second Count of Plaintiff's Complaint must be dismissed, in its entirety and with prejudice, as Plaintiff plainly does not have a right to bring such a claim.

#1500685 v1
106782-66179

V.    CIGNA WITHDRAWS ITS ARGUMENT THAT PLAINTIFF NJBSC HAS
      FAILED TO PLEAD STANDING TO PURSUE ERISA CLAIMS

       In its original motion to dismiss, CIGNA argued that the Complaint was defective

because Plaintiff had failed to plead that it was an assignee of its patients' rights under the

ERISA-governed plans at issue here and thus, it was argued, Plaintiff lacked standing to raise

these ERISA claims.  In the course of proceedings on Plaintiff's remand motion, CIGNA

established as a factual matter (distinct from whether the pleading was sufficient) that Plaintiff

was indeed an assignee of its patients' ERISA benefits.  The Complaint as pled continues to

suffer from the defect originally raised by CIGNA.  However, in light of the factual evidence

presently of record establishing that Plaintiff is an ERISA assignee, Plaintiff could cure this

defect with a simple amendment.  Therefore, CIGNA withdraws the issue of standing as grounds

for this Renewed Motion to Dismiss.

VI.   PLAINTIFF'S COMPLAINT FAILS TO ASSERT COGNIZABLE
      CLAIMS

       Notwithstanding the several incurable flaws in Plaintiff's claims -- that they are

preempted by ERISA and that Plaintiff does not possess a private right of action under the New

Jersey statutory and regulatory schemes asserted -- Plaintiff's allegations in Counts One, Two,

and Four also fail to assert cognizable causes of action.

       A.    Count One - Unjust Enrichment

       Plaintiff's reasoning for asserting unjust enrichment in Count One of the Complaint is

woefully insufficient to maintain such a claim.  In order to assert a viable unjust enrichment

claim, the Plaintiff must have conferred a benefit on CIGNA.  See Knox v. Samsung Elecs. Am.,

2009 U.S. Dist. LEXIS 53685 at *12 (D.N.J. June 24, 2009).  Here, Plaintiff asserts that by

rendering services to its patients with CIGNA health care benefit plans, it was somehow

conferring a benefit on CIGNA.  This assertion defies logic.  The benefit conferred by Plaintiff

was conferred upon its patients.  CIGNA's only relationship in this situation is with the plan

participants or members and the only benefit it derived was the payment of the premium by the

- 22 -

#1500685 v1
106782-66179

participants' employers.  It hardly benefits CIGNA that the plan participant received treatment.

To the contrary, the treatment simply triggered CIGNA's obligations to provide coverage.

Indeed, Plaintiff's Complaint fails to assert any recognizable benefit that it has bestowed on

CIGNA.  As such, Plaintiff has failed to set forth sufficiently detailed, credible factual

allegations which are able to "raise a right to relief above the speculative level." Twombly, 127

S. Ct. at 1964.  Therefore, Count One of Plaintiff's Complaint must be dismissed.

     **B.**     **Count Two - Violations of New Jersey Regulations Governing**
               **Payment for Emergency Services**

In addition to the fact that Plaintiff does not have a private right of action to raise the

claims in Count Two of the Complaint, the bald assertions it makes simply do not "raise a right

to relief." Id.  The state regulations that Plaintiff asserts are simply the standards upon which a

health maintenance organization must build its plans and policies.  For example, N.J.A.C.

§§ 11:24-5.3 simply states that an "HMO shall establish written policies and procedures

governing the provision of emergency and urgent care which shall be distributed to each

subscriber at the time of initial enrollment."  Subsection (b) merely defines the terms

"emergency and urgent care services."  Though Plaintiff has alleged that CIGNA violated this

regulation, it made no assertions as to how CIGNA did so.  In fact, Plaintiff attempts to argue

that by not paying 100% of the claims submitted, somehow CIGNA violated this regulation,

which only requires CIGNA to establish written policies and procedures governing the provision

of emergency care.  Again, such reasoning defies logic.

Similarly, N.J.A.C. § 11:24-9.1(d), another regulation enumerated in Plaintiff's

Complaint is simply a list of items that a member's statement of rights must include, such as but

not limited to, availability of care, the right to be treated with courtesy and consideration, and the

right to be given written policies and procedure.  Again, although Plaintiff has alleged that

CIGNA violated this regulation, it made no assertions as to how CIGNA did so.  Rather, Plaintiff

#1500685 v1
106782-66179

claims that somehow by not paying 100% of the claims submitted, CIGNA violated these regulations -- regulations which have nothing to do with payment to providers.

The remaining two regulations asserted, N.J.A.C. §§ 11:22-5.6(b) and 11:24-5.1(a), also enumerate standards upon which a health maintenance organization must build its plans and policies.  Similar to the argument supra, the alleged violations for the remaining two regulations asserted rely on equally flawed logic and therefore Defendant will not subject the Court to repetitive arguments.  It is painfully clear that Plaintiff has failed to set forth sufficiently detailed, credible factual allegations which are able to "raise a right to relief above the speculative level" under the enumerated state regulations.  Twombly, 127 S. Ct. at 1964.  Therefore, Count Two of Plaintiff's Complaint must be dismissed.

### C.       Count Four - Misrepresentation

The Fourth Count of Plaintiff's Complaint states that CIGNA intentionally and/or negligently made false promises to pay claims, and that Plaintiff relied on such representations to its detriment.  See Compl., Count Four at ¶¶ 3-5.  Plaintiff has simply pled the elements of a fraud claim, while referring generally to the non-specific factual allegations contained in the Complaint.  Plaintiff has not, however, attempted to identify with any sort of specificity the allegedly fraudulent conduct underlying its claims.  Such allegations do not satisfy the liberal pleading standards of Rule 8, let alone provide the heightened degree of particularity required for fraud claims under Rule 9(b).

In Twombly, 127 S. Ct at 1955, the United States Supreme Court elaborated on the standards for articulating a claim that satisfies Rule 8.  Specifically, the Twombly Court ruled that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65.  Rather, for each claim, a plaintiff must provide factual allegations sufficient to "raise a right to relief above the speculative level."  Id. at 1965.  Here, Plaintiff has provided nothing beyond a "formulaic recitation of the elements" of a fraud claim.  Accordingly,

#1500685 v1
106782-66179

the Fourth Count of the Complaint fails to satisfy the standards required under Rule 8, and cannot survive the instant motion to dismiss.

Moreover, Plaintiff has made no effort to satisfy the heightened pleadings requirements of Rule 9(b).  As this Court recently confirmed, "[r]ule 9(b) requires that a party alleging fraud 'state with particularity the circumstances constituting fraud.'"  Ramirez v. STi Prepaid LLC, 2009 U.S. Dist. LEXIS 21778, *12 (D.N.J. Mar. 17, 2009) (internal citations omitted). Specifically, "[i]n meeting the particularity requirements of Rule 9(b), a plaintiff must plead "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Id. (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984); Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)).  "In addition, Plaintiffs must allege 'who made a misrepresentation to whom and the general content of the misrepresentation.'"  Ramirez, 2009 U.S. Dist. LEXIS 21778 at *12 (quoting Lum, 361 F.3d at 224).  Here, Plaintiff has not identified any of the allegedly fraudulent statements or misrepresentations at issue, let alone any factual circumstances surrounding those statements or misrepresentations.  The claims set out in Count Four of the Complaint, therefore, are facially insufficient under Rule 9(b) and must be dismissed.

#1500685 v1
106782-66179

## CONCLUSION

For the reasons set forth above, Defendants CIGNA Healthcare of New Jersey, Inc. and CIGNA Corporation respectfully request that Plaintiff's Complaint be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

**GIBBONS P.C.**

By: <u>s/E. Evans Wohlforth, Jr.</u>
    E. Evans Wohlforth, Jr.
    Jennifer Marino Thibodaux
    One Gateway Center
    Newark, New Jersey 07102-5310
    Tel:  (973)596-4879
    Fax:  (973)639-6486
    Attorneys for Defendants CIGNA Healthcare of New Jersey, Inc. and CIGNA Corporation

Dated: March 15, 2010

- 26 -

# APPENDIX

**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

|  |  |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY DOCKET NO.: BER-L- 3 400-09 |
| Plaintiff, |  |
| vs. | **COMPLAINT AND JURY DEMAND** |
| CIGNA HEALTHCARE OF NEW JERSEY, INC. and CIGNA CORPORATION, |  |
| Defendants. |  |

Plaintiff, North Jersey Brain & Spine Center ("NJBSC"), by way of Complaint, alleges as follows:

## THE PARTIES

1.  Plaintiff, NJBSC is a neurosurgical medical practice specializing in the treatment of the brain and spinal cord and having its main office located at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649. At all relevant times, the plaintiff was (and is) an "out-of-network" medical practice that provided various medical services to subscribers and/or their dependants enrolled in the healthcare plans operated, controlled and/or administered by the defendant.

2.  Defendant, CIGNA Healthcare of New Jersey, Inc. and CIGNA Corporation (collectively "CIGNA") maintain their corporate offices in Connecticut.

## SUBSTANTIVE ALLEGATIONS

1.     CIGNA operates, controls and/or administers managed healthcare or related insurance plans and claims submitted by its subscribers and/or their dependents. At all relevant times, CIGNA provided its subscribers/dependents – patients of NJBSC -- with "out-of-network" benefits, enabling these individuals to gain access to the physicians (providers) of their choice, rather than limiting access only to "in-plan" physicians as would be true with a health maintenance organization plan.

2.     Pursuant to New Jersey statutory and administrative regulations, for each patient to be identified in this litigation, CIGNA was obligated to pay NJBSC 100% of plaintiff's billed usual, customary and reasonable ("UCR") fees, less the patient's co-pay, co-insurance or deductible, if any, and/or was required to make payment to plaintiff within 40 calendar days of receipt of plaintiff's bill. Additionally, CIGNA was unjustly enriched at the expense of NJBSC and/or misrepresented the amount NJBSC would be reimbursed for the services rendered. Contrary to applicable statutory and administrative code provisions and/or New Jersey Common Law, CIGNA has not paid anything for the surgical services rendered or has underpaid the claims and plaintiff's bills remain outstanding.

3.     It cannot be reasonably disputed that all of the surgical procedures performed were "medically necessary" and some were emergency procedures.

4.     The UCR fee, often referred to as the "reasonable and customary" fee, is defined, or is reasonably interpreted to mean, the amount that "out-of-network" providers, like the plaintiff, normally charge to their patients in the free market, i.e., without an agreement with an insurance company or other payor to reduce such a charge in exchange

for obtaining access to the insurance company's or CIGNA's subscribers. Moreover, the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

5. With respect to the services at issue rendered to the subscribers/dependents, defendant arbitrarily refused to pay the plaintiff correctly for such services. In fact, after being contacted about these claims, defendant has still refused to properly process and pay said claims.

6. By and through this lawsuit, NJBSC now seeks damages, due to defendant's actions.

7. The claims in this lawsuit do not arise under ERISA, do not arise from an assignment of benefits and do not arise under any purported federal common law or doctrine. All of the subject claims arise from New Jersey state common and statutory law.

## FIRST COUNT
### (Unjust Enrichment)

1. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2. At all relevant times, defendant consistently and systematically refused to pay plaintiff correctly for the medical services it provided to the subscribers/dependents, contrary to its insurance coverage, statutory and regulatory obligations.

3. The defendant was paid premiums by its subscribers for out-of-network benefits and, pursuant to said premiums, was legally obligated to provide such coverage to its subscribers. In order to satisfy its coverage obligations to its subscribers, defendant, by necessity, required the services of NJBSC, to render medical services. Plaintiff did, in fact, render surgical services to defendant's subscribers.

4.     The defendant has therefore received a benefit as a result of plaintiff's rendering of medical services that remain unpaid.  Thus, CIGNA has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to the plaintiff.

5.     As a result of the defendant's unjust enrichment, NJBSC has suffered damages.

WHEREFORE, plaintiff demands judgment against defendant for:

a)     Compensatory damages;

b)     Interest;

b)     Costs of suit;

c)     Punitive Damages;

d)     Attorney's fees; and

d)     Such other relief as the Court deems equitable and just.

## SECOND COUNT
### (Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered By Non-Participating Providers)

1.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2.   Pursuant to N.J.A.C. 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d), defendant was obligated to pay NJBSC 100% of plaintiff's usual, customary and reasonable ("UCR") fees, less the patient's copay, co-insurance or deductible.

3. Contrary to New Jersey administrative code provisions, however, defendant CIGNA has not properly paid for the surgical services rendered and plaintiff's bills remain outstanding.

4. As a result of the defendant's intentional and blatant violations of the subject administrative codes, plaintiff has been damaged. Plaintiff has a private right of action, express or implied, to prosecute its claim under these regulations.

WHEREFORE, plaintiff demands judgment against defendant for:

a)      Compensatory damages;

b)      Interest;

e)      Costs of suit;

f)      Punitive Damages;

d)      Attorney's fees; and

e)      Such other relief as the Court deems equitable and just

### THIRD COUNT
### (Violations of the HINT Act and HCAPPA)

1.      Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2.      Pursuant to N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1 (the relevant portions of what is commonly referred to as the Healthcare Information Networks and Technologies ("HINT") Act), and the corresponding administrative code sections codified at N.J.A.C. 11:22-1 et seq., defendant is required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by defendant or, if not submitted electronically, not later

than forty (40) calendar days following receipt. In the alternative, defendant is required to notify the provider within the same time frames of the specific reasons for a denial or dispute and to expeditiously request any missing information or documentation required to process the claims. (This provision of the HINT Act was amended effective July 11, 2006 as to electronic claims and reduced to seven (7) calendar days pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA")). The failure to do so constitutes an unequivocal waiver of defendant's right to contest such claims for any reason other than fraud. All overdue payments must bear simple interest at the rate of ten (10) percent per annum. (This interest rate increased to twelve (12) percent per annum effective July 11, 2006 pursuant to the Health Claims Authorization, Processing and Payment Act HCAPPA).

3. Despite its statutory duties, defendant as a matter of its own pattern and practice, delayed payment of properly submitted claims from the plaintiff and did not pay them correctly or at all, and then did not pay interest on the delayed payments. The defendant benefits by this practice. By delaying payment of a claim, defendant earns profits from its use of the funds, profits that it would not earn if payment were made in a timely manner.

4. NJBSC has submitted "clean" or "eligible" non-capitated claims which defendant has failed to pay within the prescribed statutory time period despite numerous attempts by plaintiff to address and resolve these issues with defendant. These practices by defendant are in violation of the HINT Act and HCAPPA.

5. The foregoing acts or omissions by defendant, in violation of the HINT Act and HCAPPA, were intentional and accompanied by a wanton and willful disregard of the

rights of plaintiff. These acts or omissions include, but are not limited to, defendant's: (i) delay or denial of payment of properly submitted claims; (ii) failure to pay interest on the delayed payments; (iii) failure to notify plaintiff of the reasons for non-payment of claims; (iv) offering of evasive or incomplete explanations to plaintiff regarding the status of outstanding claims; and (v) failure to timely notify plaintiff of the specific reasons for a claim dispute or denial. The defendant has engaged in such conduct with knowledge that there was a high degree of probability of harm by these acts or omissions because of its understanding that the plaintiff is simply too occupied with the practice of medicine and the care of its patients to be inconvenienced with never ending follow-up communications with defendant on outstanding, unpaid or inappropriately paid claims. The defendant's conduct in this regard demonstrates a reckless indifference to the consequences of its acts or omissions.

6. As a result of defendant's violations of the HINT Act and HCAPPA, NJBSC has been damaged. Plaintiff has a private right of action, express or implied, to prosecute its claims under the statutes and regulations.

WHEREFORE, plaintiff demands judgment against defendant for:

(a) Compensatory damages and interest for payment of the medical services provided which remain unpaid, are delayed or reduced as a result of the improper claims processing tactics utilized by the defendant;

(b) Costs of suit;

(c) Punitive Damages;

(d) Attorney's fees; and

(e) Such other relief as the Court deems equitable and just.

## FOURTH COUNT
### (Misrepresentation)

1.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2.    Despite its pre-authorization of treatment and pre-certification of coverage, defendant intentionally refused and has continued to refuse to pay the subject claims appropriately or at all and, in addition, intentionally and/or negligently used and/or manipulated data that understated the UCR fees for the medical services provided by NJBSC.  Because of defendant's intentional, willful and wanton conduct, and/or negligent conduct, plaintiff was paid less than the amount than an accurate UCR allowance computation would have yielded, in accordance with the pre-certification of coverage, or was not paid at all.

3.    Defendant's intentional and/or negligent false promise to pay claims appropriately and its intentional and/or negligent manipulation and skewing of the data utilized in determining the UCR fees, which resulted in payment to the plaintiff of less than the appropriate UCR fee, was unknown to the plaintiff at the time it agreed to perform the medical services for the subscribers and/or their dependents.  Plaintiff reasonably expected and relied upon what it believed to be defendant's honest representations that the plaintiff would be properly compensated in accordance with the pre-certification of coverage.

4.    NJBSC's reliance on these representations was to its substantial detriment and as a result the plaintiff suffered significant money damages.

5.    By virtue of the foregoing, defendant has committed intentional and/or negligent misrepresentation.

WHEREFORE, plaintiff demands judgment against defendant for:

a)     Compensatory damages;

b)     Punitive damages;

c)     Interest;

d)     Costs of suit;

e)     Attorney's fees; and

f)     Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

DATED:  April 10, 2009          By:_____
                                          ERIC D. KATZ

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Eric D. Katz, Esq. as trial counsel in the above matter.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

DATED:  April 10, 2009          By:_____
                                          ERIC D. KATZ

## CERTIFICATION PURSUANT TO RULE 4:5-1(b) 2

ERIC D. KATZ, of full age, hereby certifies that:

1      I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for plaintiff in this action.

2.     To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

3.     No other actions or arbitration proceedings are contemplated by this plaintiff against the defendant at this time.

4.     I know of no other parties that should be joined in this action at this time.

I certify that the foregoing statements made by me are true. I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

DATED: April 10, 2009                    _____

ERIC D. KATZ

H:\EDK\Comp Neuro\CIGNA III\Complaint and Jury Demand 4-10-09.doc